IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 25, 2015 Session

**IN RE JAKE S.**

**Appeal from the Juvenile Court for Davidson County**
**No. 163286      Sophia Brown Crawford, Judge**

_____

**No. M2014-01092-COA-R3-JV – Filed April 29, 2015**

_____

This appeal arises out of a dispute regarding parenting time and child support obligations. After Father's paternity was established, a magistrate judge named Mother the primary residential parent and granted her 230 days of parenting time. The magistrate judge granted Father 135 days. Father was ordered to pay $156 in monthly child support, plus $50 per month towards his arrearage. After Mother's request for rehearing, the juvenile court judge conducted a de novo hearing. The juvenile court granted Mother 285 days of parenting time and Father only 80. The juvenile court also set Father's child support at $331 per month, plus $50 towards his arrearage. Father appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ANDY D. BENNETT, J., joined.

Thomas H. Miller, Nashville, Tennessee, for the appellant, Jeffrey S.

James L. Curtis and Barbara Fisher Henry, Nashville, Tennessee, for the appellee, Geneva P.

**OPINION**

I. FACTUAL AND PROCEDURAL BACKGROUND

Jake S. was born out-of-wedlock in 2011 to Jeffrey S. ("Father") and Geneva P. ("Mother"). Mother and Father were in an intermittent romantic relationship for the first couple of years of Jake's life. The parties ended their relationship sometime in summer

2012. On August 24, 2012, Father filed a petition to establish paternity. He also requested a determination of custody, visitation, and child support. During the pendency of Father's petition, the court required Father to submit to random drug screens and granted him supervised parenting time for four hours per week.

A juvenile court magistrate judge conducted a hearing on Father's petition on February 15, 2013. In an order entered March 28, 2013, the court established Father's paternity of Jake and approved a permanent parenting plan. The parenting plan named Mother as the primary residential parent and granted her 275 days of parenting time. The plan granted Father 90 days of parenting time and ordered him to pay $369 in monthly child support. The parties were granted joint decision-making authority. The court reserved the issue of retroactive child support.

After a hearing regarding child support, the magistrate judge entered a *nunc pro tunc* order[1] on October 24, 2013, setting Father's monthly child support obligation at $156.00 per month and retroactive child support obligation at $2,964.00. Father was ordered to pay $50 per month towards the arrearage. The magistrate judge also adjusted Mother's parenting time to 230 days and Father's parenting time to 135 days. On June 3, 2013, Mother moved for a hearing before a juvenile court judge on the issues of parenting time, child support, and drug testing.[2]

On December 19, 2013, the juvenile court judge conducted a de novo hearing. Mother testified that: (1) Father previously used marijuana when he stayed with Mother; (2) Father sometimes left Jake in the care of his former wife and her father; (3) Father's former wife once left Jake in a car without adult supervision; (4) Father had allowed Jake to watch inappropriate video games; (5) Father had sexually propositioned her via text messages; (6) Jake's diaper had been incorrectly changed by Father's former father-in-law on one occasion; (7) Jake sometimes refers to Father's former wife as "Mommy"; and (8) Father had not adequately cared for Jake when he was sick on two occasions. Mother maintained that Father had not lived with Jake and her after Jake's birth. She claimed that Father went back and forth between her home and his former wife's home from May 2011 to July 2012. Mother also stated that Father did not provide any support for Jake from his birth until at least July 2012.

---

[1] Although captioned as "Order *Nunc Pro Tunc*," the order did not specify the date to which it retroactively applied.

[2] Both Tennessee Code Annotated § 37-1-107(e) (2014) and Tennessee Rule of Juvenile Procedure 4(c)(1) permit any party to request a rehearing before a juvenile court judge of certain matters heard by a magistrate.

Father represented himself at the hearing. After Mother closed her proof, Father initially declined to offer any proof. Counsel for Mother then called Father to testify.[3] Father admitted that he had previously used marijuana and had tested positive two times for drug use during the pendency of the paternity petition. He also admitted he had been convicted of a drug charge but claimed he had not used drugs since December 2012. Father denied that he encouraged Jake to call his former wife "Mommy," and stated that he attempted to correct Jake when he did so. Contrary to Mother's testimony, Father claimed that he lived with Mother from the time of Jake's birth until summer 2012, but he conceded some back and forth between Mother's home and his former wife's home. When asked if Mother and he had "[b]roken up in the sense there was not going to be any back and forth," Father responded, "[y]es."

On January 2, 2014, the juvenile court judge entered an order, incorporating a new permanent parenting plan. The court made findings of fact regarding only the parties' incomes, child credits, child care expenses, and Father's child support payments to Mother. The court set Father's child support at $331 per month retroactive to Jake's birth and awarded Mother a judgment for Father's arrearage in the amount of $10,369.09. Father was required to pay an additional $50 per month towards the arrearage. The parenting plan named Mother as the primary residential parent, gave her all decision-making authority for the child, and granted her 285 days of parenting time. Father was granted 80 days of parenting time. The permanent parenting plan also prohibited Father from "consum[ing] any drugs, legal or illegal, 12 hours prior to exercising parenting time and while in the possession of the minor child."

Father filed motions to correct a clerical mistake and to amend findings of fact and to alter or amend the judgment. He requested that the court make additional findings of fact under Tennessee Rule of Civil Procedure 52.01 regarding the parenting schedule and retroactive child support.

In response to the motions, on May 15, 2014, the juvenile court entered a supplemental order. The court reduced Father's child support arrearage to $10,194.09. The court also made the following additional findings regarding the best interest of the child:

1. The love, affection and emotional ties existing between the parents or caregivers and the child favor both parents equally.

---

[3] Counsel for Mother called Father as a "rebuttal witness." A rebuttal witness is a witness called "to explain or controvert evidence produced by an adverse party." *See Cozzolino v. State*, 584 S.W.2d 765, 768 (Tenn. 1979), *abrogated on other grounds by State v. Reid*, 91 S.W.3d 247 (Tenn. 2002). In actuality, the juvenile court allowed Mother to reopen her proof, which was within its discretion. *See Simpson v. Frontier Cmty. Credit Union*, 810 S.W.2d 147, 149 (Tenn. 1991).

2.  The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education, other necessary care, and the degree to which a parent has been the primary caregiver favors the mother.

3.  The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment favors the mother.

4.  The stability of the family unit favors the mother.  The proof presented was that even after the father filed this parentage action, he tested positive on two separate occasions to marijuana use, which is particularly relevant given that he is a convicted felon for drug charges from years ago.

5.  The mental and physical health and the home, school and community record is currently equal between the parents.

6.  The reasonable preference and evidence of physical or emotional abuse to the child are not applicable.

7. The character and behavior of any other person who resides in or frequents the home of either parent does not weigh against either parent.

8. Each parent's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close relationship with the other parent does not weigh against either parent.

## II. ANALYSIS

On appeal, Father raises two issues: (1) whether the trial court erred in its determination of parenting time;[4] and (2) whether the trial court erred in its calculation of Father's retroactive child support obligation.  In addition to these two issues, Mother requests an award of her attorney's fees incurred on appeal.

### A.  Standard of Review

A residential parenting schedule for the child of unmarried parents is established using the same standards applicable to divorce cases.  Tenn. Code Ann. § 36-2-311(a)(9) & (10) (2010).  Courts must fashion a residential schedule "consistent with the child's developmental level and the family's social and economic circumstances, which encourage[s] each parent to maintain a loving, stable, and nurturing relationship with the child."  *Id*. § 36-6-404(b).  Unless certain limiting factors are "dispositive of the child's

---

[4] The parties stipulated that Mother should be designated the primary residential parent.

residential schedule," the court determines the schedule on the basis of the child's best interest, relying on a non-exclusive list of factors found at Tennessee Code Annotated § 36-6-106(a). *Id.*

A trial court's determination of a child's best interest is a question of fact. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013); *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Therefore, appellate courts must "presume that a trial court's factual findings on . . . [best interest] are correct and not overturn them, unless the evidence preponderates against the trial court's findings." *Armbrister*, 414 S.W.3d at 693. In weighing the preponderance of the evidence, the trial court's findings of fact that are based on witness credibility are given great weight, and they will not be overturned absent clear and convincing evidence to the contrary. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). The details of a residential parenting schedule lie with the trial court's discretion. *See Armbrister*, 414 S.W.3d at 693.

Support for the child of unmarried parents is also established using the same standards applicable to divorce cases. Tenn. Code Ann. § 36-2-311(a)(11). Child support obligations are generally determined according to the Tennessee Child Support Guidelines. Tenn. Code Ann. § 36-5-101(e)(1)(A). The formula found in the Child Support Guidelines sets the presumptive amount of support, but a trial court has discretion to deviate from the presumptive amount in certain instances. *Reeder v. Reeder*, 375 S.W.3d 268, 275 (Tenn. Ct. App. 2012) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)).

A trial court abuses its discretion only if it applies an incorrect legal standard; reaches an illogical conclusion; bases its decision on a clearly erroneous assessment of the evidence; or employs reasoning that causes an injustice to the complaining party. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *see also Kline v. Eyrich*, 69 S.W.3d 197, 203-04 (Tenn. 2002); *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). When reviewing a lower court's discretionary decision, we must determine: "(1) whether the factual basis for the decision is properly supported by evidence in the record; (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision; and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

### B. Parenting Time

Father challenges the trial court's award of only 80 days of parenting time each year. Father argues that this allocation does not satisfy the statutory directive to "order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child," consistent with the child's best interest, the parents'

locations, the child's need for stability, and other relevant factors. Tenn. Code Ann. § 36-6-106(a).

The trial court considered the following statutory factors in making its best interest determination:

(1) The love, affection and emotional ties existing between the parents or caregivers and the child;

(2) The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;

(3) The importance of continuity in the child's life and the length of time the child lived in a stable, satisfactory environment . . . ;

(4) The stability of the family unit of the parents or caregivers;

(5) The mental and physical health of the parents or caregivers. . . . ;

(6) The home, school, and community record of the child;

. . . .

(9) The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child; and

(10) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

Tenn. Code Ann. § 36-6-106(a)(1)-(6), (9), (10) (Supp. 2013). The court concluded that factors (1), (5), (6), (9), and (10) weighed equally in favor of Mother and Father. However, the court concluded that factors (2), (3), and (4) weighed exclusively in favor of Mother.

The evidence does not preponderate against the trial court's finding regarding the child's best interest. Factor two weighs in Mother's favor because she has been Jake's primary caregiver throughout his life. Likewise, factor three weighs in Mother's favor

because Jake has thrived in her home since birth.[5] Factor four focuses on the stability of the family unit of the parents or caregivers. Father's family unit is relatively stable, though the record indicates that his relationship with his former wife has been tumultuous. On the other hand, Mother's family unit is stable. Factor nine examines the character, behavior, and interactions with the child of others who live in the parent's home. With respect to this factor, Mother offered testimony that both Father's former wife and former father-in-law, in at least one instance, provided inadequate care for Jake. For her part, Mother has secured reliable alternative caregivers when she cannot care for Jake.

Father admitted that he had previously used and sold drugs and been convicted for a drug felony. He did not disagree with Mother's contention that Jake had been frequently supervised by his ex-wife and her father, or that Jake has been temporarily left without adult supervision. He admitted that he has allowed Jake to watch mature-rated video games but claimed he could use parental controls to censor the content. Father admitted that sometimes Jake calls his ex-wife "Mom," but explained that he "tr[ies] to correct it." Other than offering explanations for Mother's concerns, Father offered no proof demonstrating his parental fitness and ability.

We also find no abuse of discretion in the award of 80 days of residential parenting time to Father. Even where both parties have offered proof, we are hesitant to second-guess a trial court's decision on residential parenting. *See, e.g.*, *Carroll v. Corcoran*, No. M2012-01101-COA-R3-CV, 2013 WL 2382292, at *3 (Tenn. Ct. App. May 29, 2013) (quoting *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1998)). Here, Mother offered evidence demonstrating Father's prior drug use, inadequate supervision or care for the child, and instances of inappropriate communications with Mother. Father offered almost no countervailing evidence. On this record, the trial court's decision was certainly within the range of acceptable alternative dispositions. *See Lee Med.*, 312 S.W.3d at 524.

## C. Child Support

Father argues the juvenile court incorrectly assessed a child support obligation retroactive to Jake's birth in January 2011. Father claims that he lived with Mother and Jake from May 2011 to July 2012 and, therefore, he should not be required to pay child support for that period.

"[T]he obligation to support a child exists from the child's birth, and upon entry of an order establishing paternity, the father is liable for support back to that date." *State ex*

---

[5] Mother had custody of Jake until Father was adjudicated as his legal and biological father. Tenn. Code Ann. § 36-2-303 (2010) ("Absent an order of custody to the contrary, custody of a child born out of wedlock is with the mother.")

*rel. Clark v. Wilson*, No. M2001-01626-COA-R3-CV, 2002 WL 31863296, *3 (Tenn. Ct. App. Dec. 23, 2002). An award of retroactive child support is within the trial court's discretion. *K.A.G. v. B.L.I.*, No. M2008-02484-COA-R3-JV, 2009 WL 4175861, *5 (Tenn. Ct. App. Nov. 25, 2009). However, the court's discretion is "cabined by the statutory requirement that it must presumptively apply the Child Support Guidelines." *In re T.K.Y.*, 205 S.W.3d 343, 355 (Tenn. 2006); *see also* Tenn. Code Ann. § 36-5-101(e)(1)(A); *Reeder*, 375 S.W.3d at 275.

The Guidelines contemplate an award of child support only when the child's parents are not living together. *See* Tenn. Comp. R. & Regs. 1240-2-4-.01, -.03(2); *Barnett v. Barnett*, 27 S.W.3d 904, 909 (Tenn. 2000). The trial court determined that Father owed a child support obligation retroactive to Jake's birth in January 2011. Therefore, the trial court implicitly found: (1) that Mother and Father have not lived together since that date, and (2) Father had not been providing support for the child since that date.

The evidence does not preponderate against either of those findings. Mother testified that she and Father were not living together when Jake was born in January 2011. After Jake was born, Mother testified that Father went "back and forth between" her home and his former wife's home from May 2011 to July 2012. Mother stated that Father was not living full time with her during that time, but would spend a few hours at her house and then be gone again "for hours." She also testified that he did not provide for Jake during that period.

Father did not rebut any of Mother's claims in his limited testimony. At one point, Father tacitly admitted that he had been intermittently visiting Mother and his former wife, but he did not elaborate on how much time he spent at Mother's home. Father also failed to offer proof of any support he provided for Jake from May 2011 to July 2012.

### D. Attorney's Fees

Pursuant to Tennessee Code Annotated § 36-5-103(c) (2014), appellate courts have discretion to award a prevailing party fees incurred on appeal to enforce a child support order. *Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008); *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). We consider the following factors in our decision to award fees: (1) the requesting party's ability to pay the accrued fees; (2) the requesting party's success in the appeal; (3) whether the requesting party sought the appeal in good faith; and (4) any other relevant equitable factors. *Hill v. Hill*, No. M2006-02753-COA-R3-CV, 2007 WL 4404097, at *6 (Tenn. Ct. App. Dec. 17, 2007).

Considering the factors above, we award Mother her attorneys' fees incurred on appeal. Mother prevailed on appeal, and the child benefits from the award of support. *See Richardson v. Spanos*, 189 S.W.3d 720, 729 (Tenn. Ct. App. 2005). We remand this

case to the trial court for a determination of the proper amount of attorneys' fees to be awarded to Mother.

### III. CONCLUSION

Because we conclude that the trial court did not abuse its discretion in establishing the parenting schedule and child support, we affirm the judgment of the trial court. The matter is remanded for further proceedings consistent with this opinion.

_____
W. NEAL McBRAYER, JUDGE