FILED
10/31/2017
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
September 5, 2017 Session

IN RE BRILEY R.

**Appeal from the Juvenile Court for Montgomery County**
**No. 16-JV-59        Ray Grimes, Judge**

_____

**No. M2016-01968-COA-R3-JV**

_____

This appeal arises from the adoption of a permanent parenting plan and the determination of a father's child support obligation.  The father argues that the juvenile court erred in both its fashioning of the parenting plan and its calculation of his child support obligation.  Because the court made insufficient findings of fact and conclusions of law, we vacate and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Vacated and Case Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT JR., P.J., M.S., joined.

Steven C. Girsky, Clarksville, Tennessee, for the appellant, David R.,

Adrienne Gilliam Fry, Clarksville, Tennessee, for the appellee, Megan R.

**OPINION**

**I.**

David R. ("Father") and Megan R. ("Mother") married on May 30, 2014, in Florida.  They moved, along with Mother's son from a prior marriage, to Clarksville, Tennessee, due to Father's military service.  The exact date of the move is not reflected in the record, but the parties moved into a house in Clarksville in May 2015.  That same month, they welcomed their daughter, Briley R.

In June 2015, Father left the army and began working as an over-the-road truck driver making approximately $700-900 per week. Mother stayed at home caring for the children.

Perhaps foreshadowing events to come, in October 2015, a Florida court annulled the marriage between Father and Mother because, at the time of their marriage, Mother's divorce from her prior husband was not yet final. Sometime in mid-December 2015, Father left the home he shared with Mother and moved back to Florida to live with his parents. But he continued to pay the mortgage on the house, the car loan, utilities, and phone bills.

On January 14, 2016, Mother filed a petition for legitimation in the Juvenile Court for Montgomery, Tennessee, seeking entry of a parenting plan and child support. Father filed an answer and counter-petition for custody. After a pre-trial hearing, the court ordered, among other things, Father to "continue to pay the regular bills he had been paying pending further order." The court also established a temporary parenting plan, directing each party to exchange the child just south of Atlanta, Georgia, every two weeks beginning on February 13, 2016.

The juvenile court conducted a bench trial on April 1, 2016, which lasted less than two hours. Father, Mother, and Briley's pediatrician testified.

According to Mother's testimony, Father abandoned the children and her without warning and left them with no means of support. She also claimed surprise that Father had quit his job. Mother did admit that Father continued to pay expenses after leaving and that he left some money in a joint check account. Mother also conceded that she was receiving child support from her former husband.

Father disputed Mother's version of events, asserting that he left because the parties were already having problems. According to Father, Mother "knew it was coming," and Mother "told [him] to leave on multiple . . . occasions."

Father claimed to have quit his job as a truck driver because of his belief that he would never get custody of Briley unless he obtained a more stable job. His job kept him on the road and away from home seven to nine days at a time. He testified that he was compelled to move back in with his parents in Florida because he could not pay both the mortgage on the house and rent for an apartment in Clarksville.

The parties entered into evidence various texts and Facebook messages. Generally, this evidence reflected poorly on both Father and Mother. Father also played for the court recordings of his interactions with Mother, but the recordings themselves were not introduced into evidence.

2

The pediatrician testified briefly regarding her interactions with Briley and Mother. She expressed her opinion that Mother was "a very good . . . mom" and took proper care of Briley. But she acknowledged not knowing Mother well.

The testimony related to child support was extremely limited. Mother testified she had been working as a part-time pharmacist technician for a little over a month, making $10 per hour and working between 10 to 15 hours per week. Father testified he worked full-time at an air conditioning company making $12 per hour.

In an order entered on May 20, 2016, the juvenile court named Mother the primary residential parent and awarded her 267 days of parenting time. The court awarded Father 98 days. In support of its ruling, the court made the following findings of fact[1]:

> 1. That the Court has considered the factors in Tenn. Code Ann. § 36-6-101 [sic];
> 2. That the factors enumerated in Tenn. Code Ann. § 36-6-101 [sic] weigh in favor of the Petitioner;
> 3. That the Court specifically finds that the [Mother] is a loving and caring mother and has been the only parent that is a stable part in the minor child's life;
> 4. That the [Mother] is hereby designated as the Primary Residential Parent;
> 5. That the [Father] voluntarily left the [Mother] and minor child in Clarksville, Tennessee, to move back with his parents in Florida;
> 6. That the parties had established a life in Clarksville, Tennessee, to include building a home, purchasing cars, and receiving healthcare of the minor child;
> 7. That the [Mother's] Permanent Parenting Plan is hereby adopted and incorporated as part of this final order.

Under the approved permanent parenting plan, Father was to exercise his parenting time every second full week of the month, except for June and July, when he would be allowed two weeks to be determined by the parties. And Father was responsible for transporting the child to and from Clarksville and for all transportation costs.

The court also ordered Father to pay $833 monthly in child support. The court made the following findings and rulings relative to child support:

---

[1] The court ruled from the bench at the conclusion of the bench trial, making a few additional factual findings. But those findings were not incorporated by reference or otherwise reflected in the court's order, so we need not consider them. *See In re Adoption of E.N.R.*, 42 S.W.3d 26, 31 (Tenn. 2001) ("[T]he court speaks through its order, not through the transcript.").

8. That the [Mother's] income is imputed at minimum wage[] . . . ($1,256.00) for child support purposes, and the [Father's] income is . . . ($2,080.00), and child support shall be based upon the Tennessee Child Support Guidelines;

9. That child support shall be paid through the Child Support Receiving Unit starting on May 1, 2016;

10. That no child support arrearage exists at the date of this hearing;

11. That the [Mother] and [Father] lived in a home together in Clarksville, Tennessee, where the [Mother] and minor child still reside;

12. That the [Mother] and minor child must vacate the residence on or before May 1, 2016;

13. That the [Mother] may continue using the [Father's] vehicle until May 1, 2016; and

14. The [Mother] must return the [Father's] car on or before May 1, 2016.

Prior to the court's entry of the May 20, 2016 order, Father filed a "Motion in Opposition to Relocation and Motion to Clarify and Reconsider or Amend Ruling." In his motion, Father sought, among other things, to restrain Mother from relocating with the child. He also asked the court to reconsider the primary residential parent designation, to clarify the disposition of the personal property in the residence, and to order a deviation in child support because of the cost of transportation. At the hearing on the motion, Father additionally argued that no proof was offered at trial as to the $650 in work-related childcare expenses Mother claimed on the child support worksheet attached to her proposed permanent parenting plan. Mother's counsel suggested that the court "reset that particular issue."

On June 10, 2016, the juvenile court entered an order denying for the most part Father's motion. The court did slightly modify the parenting time for the Thanksgiving holiday. The court also scheduled a fifteen-minute hearing "for the express purpose of determining childcare expenses paid by the" Mother.

On July 1, 2016, the juvenile court held a post-trial evidentiary hearing to determine Mother's work-related childcare expenses. Mother testified that she paid $56 for Briley's daycare the first week of the month. Because Briley spent the second week of each month with Father and the rate increased if the child missed more than five days in a month, Mother paid $150 per week for the remainder of the month.

In addition to day care, Mother testified that she paid a private babysitter $25 per day the second weekend of each month. Because Mother worked late, she also paid a babysitter $15 to watch Briley one weekday per week.

Mother also introduced into evidence receipts from the daycare. For the months of March, April, May, and June of 2016, the receipts submitted totaled $70, $196, $537, and

4

$267, respectively. Each receipt, except one, indicated that the payments were made on behalf of both Briley and Mother's son. And Mother admitted that those payments were made for both children.

According to Mother, she anticipated her future childcare expense for Briley would increase to $650 per month. Mother explained that both children were on a government certificate program, allowing her to pay a reduced rate for childcare.[2] But, because Mother had obtained a new job making more money, Mother claimed the new weekly expense for Briley would be $150 per week.

On September 2, 2016, the juvenile court entered an order increasing Father's child support obligation to $910 per month. The court found that Mother was "currently paying $765.00 per month in child care for Briley" and that "the new child support amount shall be $910 per month which includes the credit of $765 for child care needs."

In another order entered on September 16, 2016, the juvenile court addressed certain matters raised orally by counsel for both parties at prior hearings. Although Mother had testified at the July 1 hearing that she had new employment and was now making $15 per hour and working 30 hours per week, the court declined to factor Mother's increased income into the calculation of child support. The court also declined a request to credit Mother $90 per month because Briley could be added to Mother's health insurance at her new place of work.[3]

## II.

Father appeals, raising three issues. We summarize and combine those issues into two: whether the juvenile court erred in fashioning the permanent parenting plan and whether the juvenile court erred in computing the child support obligation.

## A.

A residential parenting schedule for the child of unmarried parents is established using the same standards applicable to divorce cases. *See* Tenn. Code Ann. § 36-2-311(a)(9) & (10) (2017). Courts must fashion a residential schedule "consistent with the child's developmental level and the family's social and economic circumstances, which encourage[s] each parent to maintain a loving, stable, and nurturing relationship with the child." *Id.* § 36-6-404(b) (2017). Unless certain limiting factors are "dispositive of the child's residential schedule," the court determines the schedule on the basis of the child's

---

[2] Although her children no longer qualified for the program due to Mother's new job and increased pay, Mother at the time of the hearing still paid the reduced rate because she had not updated her employment information with the certificate office.

[3] The court also found that, as of the date of the order, there was no child support arrearage.

best interest, relying on a non-exclusive list of factors found at Tennessee Code Annotated § 36-6-106(a). *Id.*

A trial court's determination of a child's best interest is a question of fact. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013); *In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Therefore, appellate courts must "presume that a trial court's factual findings on . . . [best interest] are correct and not overturn them, unless the evidence preponderates against the trial court's findings." *Armbrister*, 414 S.W.3d at 693. In weighing the preponderance of the evidence, the trial court's findings of fact that are based on witness credibility are given great weight, and they will not be overturned absent clear and convincing evidence to the contrary. *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). The details of a residential parenting schedule lie within the trial court's discretion. *See Armbrister*, 414 S.W.3d at 693.

A trial court abuses its discretion only if it applies an incorrect legal standard; reaches an illogical conclusion; bases its decision on a clearly erroneous assessment of the evidence; or employs reasoning that causes an injustice to the complaining party. *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008); *see also Kline v. Eyrich*, 69 S.W.3d 197, 203-04 (Tenn. 2002); *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001). When reviewing a lower court's discretionary decision, we must determine: "(1) whether the factual basis for the decision is properly supported by evidence in the record (2) whether the lower court properly identified and applied the most appropriate legal principles applicable to the decision and (3) whether the lower court's decision was within the range of acceptable alternative dispositions." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010).

While a trial court has broad discretion in fashioning the details of a parenting plan, the touchstone is the best interest of the child. Tenn. Code Ann. § 36-6-106(a) (2017); *see also Maupin v. Maupin*, 420 S.W.3d 761, 770 (Tenn. Ct. App. 2013). In the absence of a finding that the limitations in Tennessee Code Annotated § 36-6-406[4] apply, a trial court's goal is to craft a permanent parenting plan that promotes the child's best interest, which requires consideration of the statutory best interest factors. Tenn. Code Ann. § 36-6-106(a).

Regrettably, our review is hampered by the juvenile court's failure to make specific findings of fact and conclusions of law with regard to its decision to adopt Mother's proposed permanent parenting plan. The juvenile court also failed to find that the plan was in the child's best interest. "In bench trials, trial courts must make findings of fact and conclusions of law to support their rulings." *Hardin v. Hardin*, No. W2012-

---

[4] Tennessee Code Annotated § 36-6-406 specifies that a court may order restrictions on a parent's residential time if the court determines that the parent has engaged in certain types of conduct. Tenn. Code Ann. § 36-6-406 (2017).

6

00273-COA-R3-CV, 2012 WL 6727533, at *3 (Tenn. Ct. App. Dec. 27, 2012); Tenn. R. Civ. P. 52.01. "Simply stating the trial court's decision, without more, does not fulfill this mandate." *Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *8 (Tenn. Ct. App. Oct. 24, 2012).

Tennessee Rule of Civil Procedure 52.01[5] requires trial courts to make specific findings of fact and conclusions of law, even if neither party requests them. *See, e.g.*, *Ward v. Ward*, No. M2012-01184-COA-R3-CV, 2013 WL 3198157, at *14 (Tenn. Ct. App. June 20, 2013). Rule 52.01 provides, in relevant part, "In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Tenn. R. Civ. P. 52.01.

"[F]indings of fact are particularly important in cases involving the custody and parenting schedule of children, as these determinations often hinge on subtle factors, including the parents' demeanor and credibility during [the] proceedings." *In re Connor S.L.*, No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at *4 (Tenn. Ct. App. Nov. 8, 2012) (internal quotations omitted). The parties themselves deserve to know the factual basis for the trial court's decision on such important matters. *Ward*, 2013 WL 3198157 at *15. Trial courts also need "to be as 'precise as possible in making child custody findings'" in order to facilitate appellate review. *In re Connor S.L.*, 2012 WL 5462839 at *7 (quoting *In re Elaina M.*, No. M2010-01880-COA-R3-JV, 2011 WL 5070901, at *8 (Tenn. Ct. App. Oct. 25, 2011)).

Under Rule 52.01, a trial court's order should indicate why and how it reached a decision and which factual findings led the court to rule as it did. *Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799, at *4 (Tenn. Ct. App. Feb. 22, 2013). Although the court need not list every applicable statutory factor and an accompanying conclusion for each factor, the trial court is required to "consider all applicable factors." *See id.* (quoting *In re Connor S.L.*, 2012 WL 5462839, at *7). But we have no indication that a trial court has considered all applicable statutory factors apart from its written order. *Anil Const., Inc. v. McCollum*, No. W2013-01447-COA-R3-CV, 2014 WL 3928726, at *8 (Tenn. Ct. App. Aug. 7, 2014) ("It is well-settled that a trial court speaks through its written orders—not through oral statements contained in the transcripts—and that the appellate court reviews the trial court's written orders.") (citing *Alexander v. JB Partners*, 380 S.W.3d 772, 777 (Tenn. Ct. App. 2011); *Palmer v. Palmer*, 562 S.W.2d 833, 837 (Tenn. Ct. App. 1977)).

---

[5] The Tennessee Rules of Civil Procedure govern this proceeding under Tennessee Rule of Juvenile Practice and Procedure 101(c)(3)(D).

If we cannot determine from the trial court's written order what legal standard it applied or what reasoning it employed, then the trial court has not complied with Rule 52.01. *See Ray v. Ray*, No. M2013-01828-COA-R3-CV, 2014 WL 5481122, at *16 (Tenn. Ct. App. Oct. 28, 2014). The reviewing court must be able to ascertain "the steps by which the trial court reached its ultimate conclusion on each factual issue." *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013) (quoting 9C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2579, at 328 (3d ed. 2005)). "Without such findings and conclusions, this court is left to wonder on what basis the [trial] court reached its ultimate decision." *In re M.E.W.*, No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. Apr. 21, 2004). That is precisely the scenario we face in this case.

Here, we are left to wonder how the juvenile court reached its decision to award parenting time to the parties; what legal standard it applied; and what statutory factors were considered.[6] The juvenile court made no factual findings regarding the credibility of Father or Mother and made no mention of the statutory best interest factors that should have directed its decision.[7] Tenn. Code Ann. § 36-6-106(a); *see also Pandey*, 2013 WL 657799, at *4. Because the juvenile court failed to make sufficient findings of fact or conclusions of law to explain its decision, we cannot discern whether it abused its discretion.

Father acknowledges that the juvenile court's findings of fact are deficient but requests that we make an independent review of the record.[8] Although "the appellate court may choose to conduct its own independent review of the record" in the absence of sufficient findings of fact, it is not prudent to do so in this case. *Williams v. Singler*, No. W2012-01253-COA-R3-JV, 2013 WL 3927934, at *10 (Tenn. Ct. App. July 31, 2013); *see also Lovlace*, 418 S.W.3d at 36; *Brooks v. Brooks*, 992 S.W.2d 403, 404-05 (Tenn. 1999); *Coley v. Coley*, No. M2007-00655-COA-R3-CV, 2008 WL 5206297, at *6 (Tenn. Ct. App. Dec. 12, 2008). Unlike other cases in which we have conducted an independent review, this record lacks conclusions of law and, perhaps most importantly, assessments

---

[6] The only indication as to why the juvenile court so limited Father's parenting time was the finding that he "voluntarily left the [Mother] and [Briley] in Clarksville, Tennessee, to move back with his parents in Florida." However, parenting plans should never be used as a punishment or a reward to parents for their past behavior. *Earls v. Earls*, 42 S.W.3d 877, 885 (Tenn. Ct. App. 2000); *Turner v. Turner*, 919 S.W.2d 340, 346 (Tenn. Ct. App. 1995); *Long v. Long*, 488 S.W.2d 729, 733 (Tenn. Ct. App. 1972).

[7] As discussed above, the juvenile court's order only stated that it "ha[d] considered the factors in Tenn. Code Ann. § 36-6-101 [sic]" and that the factors weighed in favor of Mother.

[8] Mother, on the other hand, uses the juvenile court's scant factual findings and applies them over and over to each of the statutory best interest factors in an attempt to support the ruling of the juvenile court.

of the parents' credibility. Without these determinations, we are ill-equipped to conduct an independent review of the record.

In light of this, we vacate the juvenile court's order and remand for entry of an order in compliance with Rule 52.01. *See Hardin*, 2012 WL 6727533, at *6; *Pandey*, 2013 WL 657799, at *5-6; *In re Connor S.L.*, 2012 WL 5462839, at *4; *Simpson v. Fowler*, No. W2011-02112-COA-R3-CV, 2012 WL 3675321, *4 (Tenn. Ct. App. Aug. 28, 2012). Due to the limited proof presented in this case and the passage of time, on remand, the juvenile court may, in its discretion, consider additional evidence. Pending entry of the order on remand, the provisions of the current parenting plan will remain in effect as a temporary order.

B.

Support for the child of unmarried parents is also established using the same standards applicable to divorce cases. Tenn. Code Ann. § 36-2-311(a)(11). Child support obligations are generally determined according to the Tennessee Child Support Guidelines. *Id.* § 36-5-101(e)(1)(A) (2017). The formula found in the Child Support Guidelines sets the presumptive amount of support, but a trial court has discretion to deviate from the presumptive amount in certain instances. *Reeder v. Reeder*, 375 S.W.3d 268, 275 (Tenn. Ct. App. 2012) (citing *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996)).

In this case, our decision to vacate the permanent parenting plan necessitates that we also vacate the child support order. The determination of child support depends in part on the amount of parenting time awarded to each parent. Tenn. Comp. R. & Regs. 1240-02-04-.04(7) (2008). And the juvenile court on remand, after considering the best interest of the child, may find it necessary to alter parenting time.

But even if we had affirmed the permanent parenting plan, a remand would be necessary on the issue of child support, again because of a lack of factual findings. In its calculation of child support, the juvenile court found Mother paid "current" childcare expenses of $765 per month. Our independent review of the record sheds no light on how the court arrived at this amount. At oral argument, even counsel for Mother was at a loss to explain the childcare expense used in the child support worksheet.

On remand, we direct the juvenile court to conduct a new evidentiary hearing on child support. The court should hear evidence, not only on childcare expenses, but also on any other matter bearing on child support, including Father's and Mother's current income. The court shall then determine the child support award based on the evidence and in accordance with the Tennessee Child Support Guidelines. Husband shall continue to pay $910 per month as temporary child support pending the juvenile court's determination on remand.

9

### III.

The judgment of the juvenile court is vacated, and this cause is remanded to the juvenile court for such further proceedings as may be necessary and consistent with this opinion. The current permanent parenting plan will remain in effect pending the entry of an order adopting a permanent parenting plan that is in the best interest of the child. The current child support award will remain in effect as a temporary award pending entry of a new order setting child support.

_____
W. NEAL MCBRAYER, JUDGE