# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### October 12, 2011 Session

## PATRICK EDWARD REEDER v. JO BETH (CURTIS) REEDER

**Appeal from the General Sessions Court for Wilson County**
**No. 8415     John T. Gwin, Judge**

---

**No. M2011-00162-COA-R3-CV - Filed February 24, 2012**

---

In this post-divorce action, a father seeks to have his child support obligation reduced following the emancipation of the parties' older child. Mother opposes a reduction due to the expense of the younger child's extracurricular activities and Father's failure to exercise visitation with the younger child. Mother also seeks payment for unpaid child support from 2002. The trial court held Father was entitled to a reduction in his child support obligation, and that the circumstances justified the creation of a new parenting plan with less visitation time for Father, and an upward deviation from the Child Support Guidelines for Father's child support obligation for the younger child. Further, the court held Father in "willful civil contempt" for the unpaid support from 2002, and ordered Father to pay the arrearage and a portion of Mother's attorney fees. We affirm the trial court in all but two respects. We reverse the decision holding Father in contempt for failing to satisfy his support obligation in 2002, because it was not willful. Father was out of work due to an injury. We also reverse the decision denying prejudgment interest on the child support arrearage from 2002, finding that Tennessee Code Annotated § 36-5-101(f)(1) mandates that interest on unpaid child support shall accrue from the date the ordered support was due, at a rate of 12% per year. We also find Mother is entitled to recover reasonable and necessary attorney fees incurred on appeal and remand for determination of the amount.

**Tenn. R. App. P. 3 Appeal as of Rights; Judgment of the General Sessions Court Affirmed in Part, Reversed in Part, and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

Michael R. Jennings, Lebanon, Tennessee, for the appellant, Patrick Edward Reeder.

William E. Farmer, Lebanon, Tennessee, for the appellee, Jo Beth Reeder (Caldwell).

# OPINION

On March 9, 2000, after eleven years of marriage, Patrick Edward Reeder ("Father") and Jo Beth Curtis ("Mother") were granted a divorce. At the time of the divorce, the parties' two minor children, Bryan Curtis and Courtney Paige, were nine and four years old, respectively. No permanent parenting plan was entered at the time of divorce. The parties' marital dissolution agreement ("MDA") described their obligations and responsibilities concerning the children, pursuant to which Mother was awarded primary custody and Father granted 110 days of visitation annually.[1] Father's child support obligation was set at $225 per week.

The parties were able to amicably co-parent in the beginning and, without court approval, they agreed to change the frequency of Father's child support payments such that Father would pay $450 every two weeks instead of $225 each week.

In the Spring of 2002, Father was seriously injured and out of work for 19 weeks, during which time he paid only $100 per week in child support. When he returned to work, he resumed the $450 biweekly payments, but he never made up the arrearage.

On December 1, 2002, Father filed a petition for contempt against Mother, alleging she was prohibiting him from exercising visitation. Mother responded by filing her own petition against Father, asserting he was in contempt for the support arrearage from the previous Spring, which totaled $2,375, and alleging he had a substance abuse problem and was not fit to exercise unsupervised visitation.

The parties participated in an informal mediation to address the petitions, and on October 14, 2003, they submitted an "Agreed Order" to the court that resolved most, but not all of the issued raised in the petitions ("2003 Agreed Order"). Both parties agreed to take drug tests, to refrain from using alcohol around the children, and that Father would be allowed to continue unsupervised visitation. The issue of the $2,375 in unpaid child support was not resolved in mediation and was not addressed in the 2003 Agreed Order. The parties agreed to hold another mediation concerning the unpaid child support, but the second mediation never occurred and the issue lay dormant.

---

[1]Father was granted visitation every other weekend and Tuesday and Wednesday nights during weeks the children spent the weekend with Mother. Holidays were divided evenly, with Christmas Eve and the children's birthdays reserved for Father, and Christmas Day reserved for Mother. Father was also granted one week of uninterrupted visitation each summer.

Over the next two years, Father exercised his visitation less and less due in part to both children's involvement in numerous extra-curricular school and church activities, which often took up their week nights and weekends. Bryan played on his high school basketball team and Courtney was involved in cheerleading, teen court, and vacation bible school at her church. Mother usually attended Courtney's cheerleading functions while Father attended Bryan's basketball games. Father developed a neutral position with regard to the children's visitation: if they wanted to visit and spend time with Father, he was always available during the visitation time, but he never required the children to visit. Likewise, Mother did not force the children to visit with Father. By 2005, Father was exercising fewer than 20 days of visitation per year. He continued to pay $450 biweekly in child support.

The parties' older child, Bryan, turned 18 years old in April 2008, and graduated high school on May 31, 2008. Thereafter, Father approached Mother about reducing his child support payments, but they were unable to agree on an amount for Courtney, who was then 14 years old. Father continued to pay support pursuant to the MDA.

About one year later, on May 1, 2009, Father filed a "Petition to Reduce Child Support" based upon Bryan's emancipation. In the petition, Father also requested that the reduced rate be applied retroactively to June 1, 2008, the time of Bryan's emancipation, and that he be given "the appropriate credit for any child support overage that he has paid." In her answer, Mother conceded that Father was no longer legally obligated to support Bryan, but she argued he was not entitled to a credit for "overages," and should be held in contempt, because he never paid Mother the $2,375 arrearage from 2002.

Shortly before trial, Father requested leave to file an amended petition asserting, in the alternative, that due to changed circumstances it was in Courtney's best interest that Father and Mother share joint custody. The trial court granted Father's motion to amend the petition, and the matter was continued until July 16 and 20, 2010.

At trial, much of Mother's proof concerned Father's failure to exercise his visitation time with Courtney and the cost of Courtney's extracurricular activities, in particular a traveling competitive cheerleading team that Courtney had been a member of for several years. Mother testified that she spent a minimum of $2,000 and as much as $3,000 per year on Courtney's cheerleading activities and the requisite traveling expenses. In support of her claims, Mother presented a six-page statement itemizing various cheerleading expenses, including uniforms, lessons, and competition entry fees.

Father testified about his efforts to maintain a relationship with Courtney as she got older, and that he made himself available to Courtney but did not want his visitation to interfere with her interests. He also explained how Courtney's various school and church

activities made it impractical for her to spend the night at Father's house during the week, as Father lived in a neighboring town and began his workday at 6:00 a.m. On the weekends, he stated, Courtney often traveled or wanted to spend time with her friends. Father attended some of Courtney's out-of-town cheerleading events, but frequently had to work or help on his parents' farm. Father also testified that Mother did not actively interfere with his visitation with Courtney, but she never objected to Courtney skipping visitation, which Father believed caused Courtney to resent him when he did ask her to spend time at his house. As for his request for joint custody with Mother, Father explained that he did not want to make Courtney change schools, but he wanted her to live with him so that he could spend more time with him before she became an adult.

Concerning the child support issues, Father testified that he waited to file the petition because he hoped he would reach an informal agreement with Mother, without court involvement, to reduce his payments after Bryan graduated high school. Father also stated that Mother agreed to the 19 weeks of reduced payments in 2002 because she knew Father was out of work and unable to pay the full amount. Mother testified that she never made such an agreement and always maintained that Father needed to get court approval before modifying his support obligations, even if temporarily.

Mother also requested that Father be required to make his future child support payments by wage assignment because, since Summer 2009, Father had been sending his child support checks through certified mail, and if she wasn't at home to sign for the check when it arrived, she usually had to leave work and go to the post office to pick it up.

In a written order entered July 29, 2010, the court found a significant, material change in circumstances due to Courtney's age and busy schedule, and the fact that she spent so little time with Father over the past several years. Pursuant to those findings, the court drafted a new parenting plan for Courtney that modified the MDA from 2000. Father's parenting time was set at 92 days annually, to be exercised every other weekend and alternating holidays, with the exception of Christmas. The new plan provided that Father would have parenting time from December 26, at 7 p.m., until 7 p.m. the night before school resumed in January. Father's week night parenting time was eliminated, and he was granted two, non-consecutive weeks of summer visitation and the first half of Courtney's Fall and Spring breaks.

In the new parenting plan, Father was ordered to pay child support for Courtney in the amount of $680 per month, beginning August 1, 2010, which sum included a modest upward deviation of $33 due to Courtney's "significant additional expenses for organized school activities (cheerleading)." Father was also ordered to pay support by wage assignment. Other provisions of the new parenting plan were substantially the same as the 2000 MDA. The new parenting plan went into effect on August 1, 2010.

The court denied Father's request to retroactively apply the reduced rate back to the date of Bryan's emancipation on June 1, 2008; however, the court held that Father was entitled to a credit of $3,750 for overages paid since the filing of the petition on May 1, 2009. As for the child support arrearage from 2002, the court held Father in willful civil contempt and awarded Mother a judgment in the amount of $2,375. The court also ordered Father to pay court costs and $5,808 of Mother's attorney fees.

On appeal, Father asserts that the trial court erred by: 1) awarding an upward deviation from the Child Support Guidelines in calculating Father's child support obligation in the new parenting plan; 2) including modifications to visitation and other matters in the new parenting plan neither Mother nor Father requested; 3) refusing to apply the reduced child support obligation retroactively to the date of Bryan's emancipation; 4) requiring Father to pay $2,375 in child support arrears and holding him in contempt for the 19 weeks of reduced child support payments in 2002; and 5) requiring Father to pay court costs and a portion of Mother's attorney fees. For her part, Mother argues the trial court erred by not awarding her prejudgment interest on the unpaid child support from 2002.

Father does not appeal the trial court's denial of his request for joint custody of Courtney. Furthermore, while Father objects to "the adjustment in visitation" made in the new parenting plan versus the MDA, he does not take issue with the number of visitation days awarded, which, we note is not significantly less than the number of days awarded under the prior MDA. Rather, Father objects to the fact that his week night and Christmas Eve visitation times were eliminated and replaced with an extra week of summer vacation and extra time during Courtney's spring, fall, and winter breaks.

Because the issues concerning Father's child support obligation for Courtney following Bryan's emancipation are the primary issues in this matter, we will address these first. We will then consider the remaining modifications from the 2000 MDA incorporated into the new parenting plan. Last, we will consider the issues regarding the unpaid child support from 2002, attorney fees, and court costs.

I.
CHILD SUPPORT

Father argues the trial court erred by including an upward deviation from the Child Support Guidelines when calculating his obligation for Courtney in the new parenting plan; specifically, he argues the trial court's justification for the upward deviation – cheerleading expenses – is inappropriate. Furthermore, Father argues the trial court erred in refusing to retroactively apply the reduced rate back to the date of Bryan's emancipation.

A. Upward Deviation

Pursuant to the new parenting plan, which went in effective August 1, 2010, Father's monthly support obligation was set at $680, which included an upward deviation of $33.[2] Father contends the upward deviation was error; thus, we will examine the reasons given by the trial court to support its decision to deviate from the Guidelines. *See Kaplan v. Bugalla*, 188 S.W.3d 632, 637-38 (Tenn. 2006).

The process and criteria for ascertaining a parent's child support obligation is governed by Child Support Guidelines promulgated by the Tennessee Department of Human Services, in accordance with Tennessee Code Annotated § 36-5-101(e). The amount of support derived from a proper application of the formula in the Child Support Guidelines becomes the presumptive child support. *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). The presumptive amount of support, however, is rebuttable, Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. 1240-2-4-.01(1)(d)(1); *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005), and a trial court may, in its discretion, deviate from the amount of support required by the Child Support Guidelines. *State v. Wilson*, 132 S.W.3d 340, 343 (Tenn. 2004); *Jones v. Jones*, 930 S.W.2d 541, 544 (Tenn. 1996). When a trial court deviates from the guidelines, the court is required to specifically state in written findings why the application of the Child Support Guidelines would be unjust or inappropriate in the case. Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp R. & Regs. 1240-2-4-.07(1)(b). Although the trial courts retain an element of discretion to deviate from the presumptive amounts, such discretionary decisions must take into consideration the applicable law and the relevant facts. *Ballard v. Herke*, 924 S.W.2d 652, 661 (Tenn. 1996).

We review such discretionary decisions pursuant to a review-constraining standard. *Richardson*, 189 S.W.3d at 725 (citing *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999)). We do not have the latitude to substitute our judgment for that of the trial court. *Id.* (citing *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000)). To the contrary, a trial court's discretionary decision to deviate from the Guidelines will be upheld as long as the trial court applied a correct legal standard, *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003), the decision is not clearly unreasonable, *Bogan v. Bogan*, 60 S.W.3d 721, 730 (Tenn. 2001), and reasonable minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

---

[2]The order directed Father to pay child support twice per month in equal installments of $340.

-6-

The framework for assessing whether a deviation is appropriate is set forth in Department of Human Services Rule 1240-2-4-.07, "Deviations from the Child Support Guidelines." It provides in pertinent part:

> Special expenses incurred for child rearing which can be quantified may be added to the child support obligation as a deviation . . . . Such expenses include, but are not limited to, summer camp, music or art lessons, travel, school-sponsored extra-curricular activities, such as band, clubs, and athletics, and other activities intended to enhance the athletic, social or cultural development of a child.

Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(d)(2)(i).

The child support worksheet for the period beginning August 1, 2010, which is Exhibit A to the parenting plan, reveals that the trial court properly applied the guidelines in computing the parties' adjusted gross income and share of the basic child support obligation, including an adjustment based on Father's 92 days of parenting time.[3] The parenting time adjustment resulted in Father receiving a monthly credit of $1.35 against the Basic Child Support Obligation (BCSO)[4] and with this adjustment, Father's Final Child Support Order (FCSO) was calculated to be $647 per month.[5] The reason the presumptive child support was increased by an upward deviation of $33 per month, for a total monthly obligation of $680, is stated in the parenting plan as follows: "This amount is a deviation from the Child Support Guidelines because the child has regular, significant additional expenses for organized school activities (cheerleading)."

_____

[3]A second worksheet, Exhibit B, was used to calculate child support for the time period beginning with the filing of Father's petition to reduce child support on May 1, 2009 and ending with the entry of the final order implementing the new parenting plan on July 29, 2010. The support obligation applied during this interim period includes an $88.92 monthly increase (from Exhibit A) as a parenting time adjustment, due to the fact that Father only exercised 20 days of parenting time during that year.

[4]The amount of the Basic Child Support Obligation is rebuttably presumed to be the appropriate amount of support to be provided by both parents prior to consideration of any adjustments for parenting time and/or additional expenses. Tenn. Comp. R. & Regs. 1240-2-4-.02(5).

[5]The worksheet was not completed in the specific manner prescribed because deviations are to be included in item 14 in Part VI (titled Deviations and FCSO) and added or subtracted to calculate the FCSO which is to be listed immediately thereafter in Part VI. Here the FCSO read $647; with the inclusion of the $33 upward deviation, the FCSO should have read $680. This oversight was corrected in Section III(A)(1)(a) of the parenting plan.

Cheerleading expenses are plainly contemplated as a "special expense," Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(d)(2)(i), and we find the specific written findings provided by the trial court are legally sufficient to justify the deviation, and that the amount of the deviation is modest, considering that Courtney's expenses are as much as $3,000 per year. *See Atkins v. Motycka*, No. M2007-02260-COA-R3-CV, 2008 WL 4831314, at *7 (Tenn. Ct. App. Nov. 6, 2008) (finding that "to aid in the payment of 'the children's camp fees' is a specific reason"). Accordingly, we find no error with the upward deviation.

## B. Wage Assignment

Father contends the trial court erred in requiring child support to be paid by wage assignment. We find no error with this requirement.

Tennessee Code Annotated § 36-5-501(a)(2) requires payment of child support by wage assignment *unless the court finds good cause not to order wage assignment*. "Good cause" can only be established by proof that payment by wage assignment is *not* in the best interest of the child and that the obligor parent has made timely payments in the past, or that there is a written agreement between the parties providing for "alternative arrangements." *Id.*; *see also State ex rel. Rickard v. Holt*, No. M2009-01331-COA-R3-CV, 2010 WL 1240894, at *3 (Tenn. Ct. App. March 30, 2010). Although Father made timely payment of child support over the recent years, for the past year he has mailed the payments by certified mail, which often required Mother to leave work and travel to the post office to sign a receipt acknowledgment. The trial court obviously found this burdensome procedure unjustified and spiteful. We agree and conclude that Father failed to show the requisite good cause to be excused from wage assignment. Accordingly we find no error with this determination.

## C. Retroactive Application of Reduced Support

Father requested that the reduced child support obligation for the remaining minor child be made retroactive to the date of the older child's emancipation, June 1, 2008. The trial court denied this request and limited the retroactive application of the reduced rate to May 1, 2009, when Father's petition to reduce child support was filed. Father contends this was error and that he is entitled to a credit for overpayments from June 1, 2008.

"A parent is obligated to provide support for children only until they turn eighteen years old or graduate from high school, whichever occurs later." *Corder v. Corder*, 231 S.W.3d 346, 356 (Tenn. 2006). As a general rule, a parent has no legal obligation to support his or her adult child. *Id.*; *see also Brooks v. Brooks*, No. M2007-00351-COA-R3-CV, 2009 WL 028283, at *5 (Tenn. Ct. App. April 6, 2009). Thus, Father is correct that he was not required to pay child support for Bryan beginning June 1, 2008. However, the inquiry does

not end there, because Courtney is still a minor child and the MDA did not explicitly divide Father's support obligation evenly between the two children, nor did it provide that a certain amount was for Courtney and a certain amount was for Bryan. *See Bell v. Bell*, No. 01A01-9511-CH-00493, 1996 WL 548150, at *2 (Tenn. Ct. App. Sept. 25, 1996).

If the trial court had elected to apply the reduced rate retroactively to the date of Bryan's emancipation, "it would not be deemed a prohibited retroactive modification of the child support obligation." *Id.* However, the trial court "is not *obligated* to apply [a reduced amount] where circumstances justify the original total amount of support for the remaining minor children." *Id.* (citing *Rutledge v. Barrett*, 802 S.W.2d 604, Tenn. 1991). Rather, as with all decisions concerning the setting of child support, the trial court's obligation is to follow the Child Support Guidelines, and, if it determines within its discretion that a deviation from the Guidelines is justified, to apply that deviation. In other words, while the court is not empowered to require Father to support Bryan after June 1, 2008, the court *is* empowered to deviate from the Guidelines when calculating Father's obligation for Courtney. *See Corder v. Corder*, No. W2009–2653-COA-R3-CV, 2011 WL 683919, at *5 (Tenn. Ct. App. Feb. 28, 2011) (holding that a trial court may require the obligor parent to continue paying the full support payment, even after the emancipation of one child, where the circumstances justify a deviation from the Guidelines for the remaining child) (hereafter, "*Corder II*").

Due to Bryan's emancipation, "all other things being equal, Father was entitled to a reduction in his child support" beginning June 1, 2008. *Corder II*, 2011 WL 683919, at *5 (citing Tenn. Comp. R. & Regs. 1240-2-4-.05(b)(1)). Thus, we must determine whether the trial court properly justified its decision to require Father to continue paying $450 biweekly from June 1, 2008 through May 1, 2009.

The court's final order states, "due to the reduced time Father was visiting with Courtney the last few years, the needs of Courtney (including but not necessarily limited to cheerleading activities) were fully sufficient to require weekly support payments in the amount then being made." Being mindful of the deference owed to the trial court in these matters and considering the unique circumstances of this case, the trial court's decision was not "clearly unreasonable." *Bogan*, 60 S.W.3d at 730; *see Corder II*, 2011 WL 683919, at *5-6. Accordingly, the trial court did not err in limiting the retroactive application of the reduced child support obligation to May 1, 2009 and we find no error with the calculation of Father's credit in the amount of $3,570 for child support overages to payments made between May 1, 2009 and August 1, 2010.

## II.
### PARENTING SCHEDULE, DECISION MAKING AND DEPENDENT TAX CREDIT

Father contends the trial court erred when creating the new parenting plan by modifying his visitation from the schedule set in the MDA, by granting Mother the right to make most major decisions in Courtney's life concerning her education, religious upbringing, and extracurricular activities, and by granting Mother the dependency tax deduction for federal income tax purposes every year.

### A.  Parenting Schedule

Trial courts have broad discretion to fashion custody and visitation arrangements that best suit the unique circumstances of each case, and the appellate courts are reluctant to second-guess a trial court's determination regarding custody and visitation. *Parker v. Parker*, 986 S.W.2d 557, 563 (Tenn. 1999); *Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001). Decisions concerning custody and visitation often hinge on subtle factors, such as the parents' demeanor and credibility during the proceedings. *Adelsperger v. Adelsperger*, 970 S.W.2d 482, 495 (Tenn. Ct. App. 1997).

Furthermore, it is not the role of the appellate courts to "tweak [parenting plans] . . . in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). Thus, a trial court's decision regarding custody or visitation will be set aside only when it "falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record." *Id.*

Regarding the modifications to Father's visitation schedule, Father argues the trial court erred by eliminating his weekday and Christmas Eve visitation. His weekday visitation was replaced with an extra, uninterrupted week of summer visitation and the first half of Courtney's Fall and Spring breaks. For Christmas break, Father was awarded visitation from 7:00 p.m. on December 26 until 7:00 p.m. on the day before school resumes in January. Father argues these issues were not put before the trial court, and therefore, constitute an abuse of the trial court's discretion.

Tennessee Code Annotated § 36-6-101(a)(2)(C) sets forth the standard for modification of a court's prior decree pertaining to a residential parenting schedule:

> [T]he petitioner must prove by a preponderance of the evidence a material change of circumstances affecting the child's best interest. A material change

of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; . . . failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

The threshold issue in every case involving a modification in an existing custody or visitation arrangement is whether a material change in circumstances has occurred. *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). If a material change in circumstances has occurred, it must then be determined whether modification of the plan is in the best interest of the child. *Id.*

It is undisputed there was a material change in circumstances due to Courtney's age, changing interests, and success as a student and athlete, as well as Father's failure to exercise visitation. As we interpret it, Father's argument is that the changes to the visitation schedule are not in Courtney's best interest because neither party requested the changes, and because Christmas Eve is valuable family time. We respectfully disagree.

Father's visitation in the new parenting plan is more focused on times when Courtney is on school vacation and therefore less likely to have school activities. All of Courtney's week nights, and every other weekend, are now available for sports, church, and friends without taking away from time with Father. Moreover, although visitation is now scheduled to occur less frequently, the length of individual visits has generally increased. This will allow Father and Courtney to spend quality time together and improve their relationship without Courtney being shuttled back and forth between Father, Mother, and school activities. Father will also be able to plan ahead with his work schedule to ensure, as best he can, that he is also free from distractions when spending time with Courtney. The same is true for Courtney's Christmas break schedule. Although she will not be with Father until December 26, Father will have several continuous days of visitation thereafter to celebrate with Courtney.

A major issue at trial was Father's allegation that Mother's refusal to "encourage" Courtney to visit Father caused Courtney to resent Father and harmed their relationship. Mother testified that she believed it was an issue between Father and Courtney, and that if Father asked Courtney to visit, Mother would not have stopped her. The trial court credited both accounts, and we agree. To address this problem, the trial court included the following Special Provision in the parenting plan:

In the event the minor child shall refuse any scheduled visitation, then within five (5) days of such refusal, Mother shall schedule an initial appointment for the child with a licensed clinic social worker or advanced counselor. The child shall participate in all recommended counseling with the plan or purpose of resolving any issues which interrupt the child's visitation with the Father. Father and Mother are likewise required to follow the counselor's requests for participation in such counseling.

By including this Special Provision, the trial court removed the onus from the parents of "forcing" Courtney to visit Father and provided for the introduction of a neutral counselor into the situation should a problem arise. Not only does this arrangement accommodate the changed circumstances in Courtney's life and provide for her best interest, it is also in each party's best interest.

For these reasons, the trial court did not err in crafting the parenting schedule.

## B. Major Decisions

Father contends the trial court abused its discretion in creating the new parenting plan by granting Mother the right to make most major decisions concerning Courtney's education, extra-curricular activities, and religious upbringing. He characterizes this as a "drastic change" to the parties' MDA that neither party requested. It is not.

The 2000 MDA provided, "[Mother] shall be responsible for the care, supervision, and guidance of the parties' minor children" attendant to her responsibilities as the sole custodial parent. Thus, there is no substantive change. Under the new parenting plan, Father retains the authority to make decisions regarding the day-to-day care of Courtney *while she is with Father*, just as in the MDA. Furthermore, Father retains the parental rights provided in Tennessee Code Annotated § 36-6-101(a)(3)(A).

## C. Dependent Tax Credit

Father also contends the trial court abused its discretion by awarding Mother the dependency tax credit for federal income tax purposes every year. We find no merit to this contention. Mother was given the income tax deduction for Courtney in the MDA; thus, this also does not constitute a modification, as Father argues. Moreover, as a matter of law, unless an exception applies, the federal Tax Reform Act of 1984 allocates the tax exemption to the custodial parent. 26 USC §152(e); *Barabas v. Rogers*, 868 S.W.2d 283, 289 (Tenn. Ct. App. 1993). No exception applies in this case; thus, the court did not err in awarding Mother the dependency tax credit.

## III.
### CONTEMPT

Father argues the trial court erred by holding him in willful civil contempt for the 19 weeks of reduced child support payments he made in Spring 2002.

"A finding of willful conduct must precede a judgment for contempt." *Haynes v. Haynes*, 904 S.W.2d 118, 120 (Tenn. Ct. App. 1995). In order to find that failure to pay child support was contemptuous, "the court first must determine that [the obligor] had the ability to pay at the time the support was due and then determine that the failure to pay was wilful." *Ahern v. Ahern*, 15 S.W.3d 73, 78-79 (Tenn. 2000).

The trial court's order states: "[b]ecause of an unplanned, no-fault interruption of his job, Father had approximately 19 weeks of unemployment, during which he reduced his child support payments to Wife to $100.00 per week for 19 weeks." This factual finding by the trial court, which is supported by evidence in the record, establishes Father did not have ability to make full payment when they were due. *See Pirrie v. Pirrie*, 831 S.W.2d 296 (Tenn. Ct. App. 1992). Thus, we find the trial court erred by finding Father in contempt. Mother is nonetheless entitled to payment for the amount in arrears, Tenn. Code Ann. § 36-5-101(f)(3), regardless of the fact that the older child is now emancipated. *Lichtenwalter v. Lichtenwalter*, 229 S.W.3d 690, 693 (Tenn. 2007) (A parent "to whom child support is owed is entitled to seek reimbursement for a child support arrearage even if the child has reached majority by the time the suit is filed.").

## IV.
### PREJUDGMENT INTEREST ON CHILD SUPPORT ARREARAGE

Mother requested an award for prejudgment interest on the arrearage; the trial court denied her request. We have determined this was error and that Mother is entitled to prejudgment interest from the date(s) of the arrearage.

Tennessee Code Annotated § 47-14-123, which generally applies to civil actions, provides that prejudgment interest "*may* be awarded by courts or juries in accordance with the principles of equity." (emphasis added). Therefore, in most civil actions whether to award prejudgment interest lies within the sound discretion of the trial court, and will not be disturbed absent an abuse of discretion. *See Spencer v. A-1 Crane Service, Inc.*, 880 S.W.2d 938, 944 (Tenn. 1994); *see also Elliott v. Elliott*, 149 S.W.3d 77, 87-88 (Tenn. 2004) (holding that prejudgment interest need not be awarded to a party who was dilatory in pursuing the claim). The foregoing notwithstanding, a more specific statute applies in cases

dealing with child support arrearages, that being Tennessee Code Annotated § 36-5-101(f)(1), which removes that discretion and makes the award of prejudgment interest mandatory. The statute reads in pertinent part:

> *If the full amount of child support is not paid by the date when the ordered support is due, the unpaid amount is in arrears*, shall become a judgment for the unpaid amounts, *and shall accrue interest from the date of the arrearage,* at the rate of twelve percent (12%) per year. All interest that accumulates on arrearages shall be considered child support. Computation of interest shall not be the responsibility of the clerk.

Tenn. Code Ann. § 36-5-101(f)(1).

Read plainly, this statute provides that if a child support obligation, or any portion thereof, *is not paid by the date when the ordered support is due, the unpaid amount is in arrears, and interest shall accrue from the date of the arrearage. See id*. Thus, the statute not only mandates an award of interest for child support arrearage, it mandates that interest shall accrue from the date when the ordered support was due, not from the date a judgment for the unpaid amounts is entered. *Id*. Therefore, we respectfully reverse the trial court on this issue and remand with instructions to award Mother interest on the amount in arrears, calculated from the date the ordered support was due at the rate of 12% per year.

V.

ATTORNEY FEES & COURT COSTS

The trial court awarded Mother a portion of her court costs and required Father to pay the court costs of the proceedings below, which Father argues was error. This court "will not interfere with the trial court's decision awarding attorney fees except where there is a clear showing that the trial court reached the wrong conclusion, with a result that manifest injustice would be done if the award is allowed to stand." *Brown v. Brown*, No. M2004-01573-COA-R3-CV, 2005 WL 3447685, at *5 (Tenn. Ct. App. Dec. 14, 2005) (citing *Long v. Long*, 957 S.W.2d 825, 829 (Tenn. Ct. App. 1997)).

The basis for the award of attorney fees was the additional delay caused when Father amended his petition to include an alternative request for change of custody, very close to the scheduled trial date. Mother ultimately prevailed on the custody issue, as well as the unpaid child support from 2002. Mother presented proof of over $17,000 in attorney fees, not including two days of trial. She was only awarded $5,808, to reflect the fact that the trial court also granted Mother continuances in the proceedings, and the fact that Father's petition

to reduce child support was successful. Under these circumstances we find the trial court did not abuse its discretion.

In addition to the trial court's award of attorney fees, we find Mother, as the primary residential parent, is also entitled to attorney fees on appeal, pursuant to Tennessee Code Annotated § 36-5-103(c). *See also Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008); *Shofner v. Shofner*, 181 S.W.3d 703, 719 (Tenn. Ct. App. 2004). We remand this issue to determine the reasonable and necessary fees to which she is entitled.

## IN CONCLUSION

We affirm the trial court in all respects, with two exceptions. We reverse the decision denying prejudgment on the child support arrearage from 2002 and the decision holding Father in civil contempt. Further, Mother is entitled to recover the attorney fees and expenses incurred on appeal, the amount of which shall be determined by the trial court on remand. Accordingly, the judgment of the trial court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. Costs of appeal are assessed against Father, Patrick Edward Reeder.

_____
FRANK G. CLEMENT, JR., JUDGE