IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
November 17, 2022 Session

**NIKKI LEANNE MILES v. JAMES KURT MILES**

**Appeal from the Chancery Court for Henderson County**
**No. 23916      James F. Butler, Chancellor**
_____

**No. W2021-01356-COA-R3-CV**
_____

This case involves a long-standing and highly contentious custody matter.   Upon competing petitions to modify the existing parenting plan, the trial court determined that it was in the best interest of the child for Mother to remain the child's primary residential parent.   Father appealed, arguing that the trial court did not properly weigh the best interest factors as it pertained to the child in reaching its decision.   Finding no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

George D. Norton, Selmer, Tennessee, for the appellant, James Kurt Miles.

Nikki Leanne Miles, Jackson, Tennessee, Pro se.

**MEMORANDUM OPINION[1]**

**BACKGROUND AND PROCEDURAL HISTORY**

The parties, Nikki Leanne Miles ("Mother") and James Kurt Miles ("Father"), were married on September 10, 2007 and share one minor child ("Child"), born in December 2005.  The parties were divorced pursuant to a final decree of divorce entered on April 29,

_____
[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value.  When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

2010. In its final decree, the trial court approved the parties' agreed permanent parenting plan that was previously filed with the trial court. Pursuant to this plan, Mother was named the primary residential parent and given 183 days of parenting time while Father was given 182 days. Additionally, Mother was generally granted sole decision-making authority except for educational decisions which were to be shared jointly. The parenting plan also ordered Father to pay child support to Mother in the amount of $400 per month.

According to the record, the parties adhered to the terms of the parenting plan until February 22, 2017, when Mother filed a petition to modify child support and visitation and asked that Father's visitation with Child be supervised rather than unsupervised. On May 1, 2017, Father filed his own petition to modify the parenting plan and requested that he be named Child's primary residential parent.

The record reflects ongoing and contentious proceedings between the parties. Specifically at issue is Child's strained relationship with Father, which is riddled with allegations of physical, emotional, and verbal abuse and Child's intense fear and anxiety surrounding Father. On August 13, 2018, Father filed a petition for an *ex parte* custody order, requesting that Child be removed from Mother's custody until a hearing could be held and that, subsequent to such a hearing, Father be named the primary residential parent, among other things. In support of his request, Father alleged certain communications on Child's cell phone regarding matters of a sexual nature and possible drug use. Father also alleged that he had recently learned Child had been admitted to the hospital in Nashville. That same day, the trial court entered an order granting Father's petition, finding that it appeared Mother was "unable to safely care for the minor child during her parenting time." On August 14, 2018, Mother filed an emergency *ex parte* petition for custody and to set aside the custody order previously entered by the trial court. According to her petition, Mother alleged that Child had attempted suicide at Father's home and that Father had failed to notify Mother. Mother also alleged that Father had attempted to remove Child from the hospital against Mother's wishes and that, upon Father's attempt at removal pursuant to the *ex parte* order granted by the trial court, Child again threatened to attempt suicide. As a result of these threats, the hospital delayed Child's release for protection of Child and to allow time for the trial court to be notified of the threats. On August 20, 2018, the trial court entered an *ex parte* order that ultimately dissolved its previous order awarding Father emergency custody. Of note, the trial court found that it was in Child's best interest to be released from the hospital to Mother's custody and control.

The case lingered until January 3, 2020, when Mother filed a petition to modify child support and visitation. Father filed a response to Mother's petition, as well as a counter-petition to modify the parties' permanent parenting plan and to designate Father as the primary residential parent. Both parties filed numerous pleadings until the matter was ultimately heard by the trial court on December 3, 2020, December 4, 2020, and April 8, 2021. On August 5, 2021, the trial court made its oral ruling, which was later incorporated into its final order entered October 27, 2021. In its order, the trial court made various

findings, summarized as follows:

1. Child and Father have had little to no contact in the previous three years.
2. Child has indicated she does not wish to return to Father's home.
3. Modification of the custody arrangement would not be in Child's best interest.
4. The parties should continue family counseling in order to facilitate "some semblance of a relationship" between Father and Child.
5. Child was not to be left alone for extended periods and should not be in charge of her medications.
6. It was in Child's best interest to remain in Mother's custody and visit with Father.

This appeal followed.

## ISSUES PRESENTED

Father presents a single issue for our review on appeal, which we restate as follows:

1. Whether the trial court erred in failing to properly balance Child's best interest in making its primary residential parent determination.

## STANDARD OF REVIEW

We review the trial court's findings of fact *de novo* with a presumption of correctness unless otherwise suggested by a preponderance of the evidence. *Grissom v. Grissom*, 586 S.W.3d 387, 391 (Tenn. Ct. App. 2019). "In order for the evidence to preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect." *Ingram v. Wasson*, 379 S.W.3d 227, 237 (Tenn. Ct. App. 2011) (citing *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001)). We review the trial court's legal conclusions *de novo* with no presumption of correctness. *Grissom*, 586 S.W.3d at 391 (citing *Chaffin v. Ellis*, 211 S.W.3d 264, 285 (Tenn. Ct. App. 2006)).

Pursuant to statute and applicable case law, "the welfare and best interests of the child are the paramount concern in custody, visitation, and residential placement determinations, and the goal of any such decision is to place the child in an environment that will best serve his or her needs." *Id.* (quoting *Burden v. Burden*, 250 S.W.3d 899, 908 (Tenn. Ct. App. 2007)). Therefore, trial courts are afforded "broad discretion to fashion custody and visitation arrangements that best suit the unique circumstances of each case, and the appellate courts are reluctant to second-guess a trial court's determination regarding custody and visitation." *Id.* (quoting *Reeder*, 375 S.W.3d 268, 278 (Tenn. Ct. App. 2012)). However, while trial courts have this broad discretion, it is not without limits as decisions must still be based on the proof and "the appropriate application of the applicable principles of law." *Id.* (quoting *Gaskill v. Gaskill*, 936 S.W.2d 626, 631 (Tenn.

Ct. App. 1996)). A trial court's determination concerning custody and visitation "will not ordinarily be reversed absent some abuse of that discretion." *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988). "Under the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Id.* (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). The abuse of discretion standard does not allow this Court to substitute its judgment for that of the trial court. *Id.* (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)).

## DISCUSSION

Father challenges the trial court's order on the grounds that the trial court failed to balance Child's best interest and that the order was against logic or reasoning based on the evidence contained in the record.

In proceedings where the trial court must make a custody determination regarding a minor child, "the determination shall be made on the basis of the best interest of the child." Tenn. Code Ann. § 36-6-106(a). In considering a child's best interest, "the court shall order a custody arrangement that permits both parents to enjoy the maximum participation possible in the life of the child consistent with the factors" set forth in the statute. *Id.* The trial court must consider all relevant factors set forth in the statute as to the best interest analysis.

In its order, the trial court made its best interest findings pursuant to section 36-6-106(a) and found that it was in Child's best interest to remain in the custody of Mother and visit with Father. Specifically, it noted that Child has a "tenuous, distant relationship" with Father, while Mother performs the daily parental duties and has done so for an extended period of time since 2018; that Mother has previously tried to foster a relationship between Child and Father, but Father failed to communicate with Mother adequately; that Father's involvement with Child has been minimal; that Mother has been instrumental in providing for Child's "significant emotional needs"; that Mother "is more emotionally fit to parent this particular child" instead of Father as Father has taken a "hands off" approach for a lengthy period of time; that Child is in need of "close supervision" and largely gets that in Mother's care and does not see Father at all; that Child has clearly expressed her preference to live with Mother; and that there are no present issues concerning Child's stepfather's sobriety.

Father makes numerous arguments as to several of the factors in section 36-6-106(a) and maintains that evidence in the record preponderates against the trial court's findings as to Child's best interest. Specifically, Father's argument in its entirety appears to culminate

in his contention that Mother does not provide a stable environment for Child, that Child is manipulative and unruly and needs increased supervision, which Mother does not provide, and that he is better equipped to care for Child. However, based on our review of the record, we find Father's argument in all its respects to be unavailing. Rather, the record makes clear that Father has a "terrible" relationship with Child and that Father and Child have had minimal contact since 2018. Mother, on the other hand, has been the primary parent since 2018, handling all of the day-to-day responsibilities for Child. Mother has provided "close supervision and continuity" in Child's life and has attempted to foster a relationship between Father and Child. Father's involvement with Child's life has been near totally absent since 2018, and according to his testimony, he has not even called Mother in the two years prior to trial to inquire about Child's medical providers. Moreover, the record reflects that Child harbors severe anxiety and fear concerning Father and has made clear to the trial court her desire to reside with Mother and not to return to Father's home.

In light of the foregoing, we are unconvinced by Father's argument that the trial court failed to properly balance the best interest factors in making its determination as to who should be the primary residential parent. As we noted earlier, the trial court's determination regarding custody is ordinarily not to be reversed absent an abuse of discretion. *Suttles*, 748 S.W.2d at 429. In order for us to reverse the trial court's order, there must be an indication that the trial court applied an incorrect legal standard or reached a decision that is against logic or reasoning and causes an injustice to the complaining party. *Eldridge*, 42 S.W.3d at 85 (quoting *Shirley*, 6 S.W.3d at 247). We find nothing in the record before us indicating that an abuse of discretion has occurred.

CONCLUSION

Based on the foregoing, the trial court's order is affirmed.

s/ Arnold B. Goldin
ARNOLD B. GOLDIN, JUDGE

- 5 -