IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 6, 2024 Session

## CHRISTOPHER L. WIESMUELLER v. CORRINE NICHOLE OLIVER

**Appeal from the Chancery Court for Dickson County**
**No. 18CV80    Roy B. Morgan, Jr., Senior Judge**

_____

**No. M2023-00270-COA-R3-CV**

_____

A mother and father filed competing petitions to modify their parenting plan. The Father also sought to modify his child support obligation. In furtherance of these goals, he asked the court to admit evidence of events occurring before the denial of his previous petition to modify the parenting plan. He also moved for appointment of a guardian ad litem and for an order requiring his past Tennessee Rule of Civil Procedure 35 examinations to be destroyed. The court denied each of Father's pretrial requests. It found that no material change in circumstance had occurred and that modification of the parenting plan was not in the children's best interests. Because the trial court erred in its application of the child support guidelines, we vacate part of the child support award and remand for recalculation of Father's obligation. Otherwise, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part; Vacated in Part; and Remanded**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JEFFREY USMAN, J., joined.

Christopher Lee Wiesmueller, White House, Tennessee, pro se appellant.

Ellen Hendrickson, Charlotte, Tennessee, for the appellee, Corrine Nichole Oliver.

### OPINION

### I.

### A.

Christopher Lee Wiesmueller ("Father") and Corrine Nichole Oliver ("Mother") were declared divorced as of February 12, 2019. The court adopted a permanent parenting

plan for their three minor children, which named Mother primary residential parent. The plan allowed her 255 residential parenting days while Father was granted 110 days. Father was also ordered to pay $970 per month in child support.

A few months later, Father filed his first motion to modify child custody and support. He made a variety of complaints about Mother's behavior, focusing on what he believed were her attempts to "abusively maintain[] control" over him and her failure to accurately disclose her income. He also sought a downward deviation in child support for undue financial hardship. Mother moved for enforcement of the child support order, alleging that Father had not yet made a single payment. Based on this and other issues, Mother also petitioned for civil contempt.

After a hearing, the trial court denied Father's motion to modify custody. Because Father had failed to prove a material change of circumstances since entry of the previous custody order, the original parenting plan remained in effect. The court ordered him to pay $700 per month "towards child support and arrearage" by wage assignment. But it reserved resolution of the remaining child support and contempt issues for a later hearing.

B.

Approximately one year later, Mother asked the court to limit Father to supervised visitation based on an alleged "pattern of emotional abuse of the parties' minor children" as well as Father's new wife and stepdaughter. Mother also sought an order of protection, claiming Father's recent behavior caused her to "feel harassed, threatened, and intimidated." The court granted Mother a one-year no-contact order, which did not include the children. Upon Mother's request, the court extended the order until the final hearing on modification of the parenting plan.

Father responded with another petition to modify custody. According to him, Mother demonstrated such continuing bad character that many of her actions and inactions, taken together, amounted to a material change in circumstance. He sought to rely on Mother's conduct during and after the divorce to demonstrate her alleged bad character.

C.

At the beginning of the final hearing, Mother agreed that the no-contact order should be dissolved. The court then heard evidence on matters relating to the modification of child custody and child support. Much of the testimony focused on Father's perception of Mother's character.

Father testified that multiple material changes had occurred since the divorce. According to him, Mother had "failed to adhere to the parenting plan on several occasions." He provided evidence of two. On one occasion, Mother had delayed Father's parenting

2

time with the children by "a few days" after a child was diagnosed with COVID-19. On another, she delivered the children to a parenting exchange two hours late.

Father also complained that Mother's position on the children's phone use "deprive[d] [him] of the . . . ability to freely communicate with [the] children." She did not allow the children to bring the smartphones Father had given them into her house. And she had once refused to open a package from Father containing a cell phone for the children. She later gave the children a flip phone. According to Mother, the children were "free to use that phone to communicate with [Father]." But Father complained that he sometimes did not get to exercise his weekly phone time with the children.

According to Father, these and other actions demonstrated Mother's "continued hostility to [his] relationship with [t]he children." In his view, her requests for supervised visitation and the order of protection had no merit, and she had improperly accused him of parental alienation. She was, in Father's words, "wag[ing] a campaign to repeatedly falsely accuse [him] of abuse."

Father accused Mother of "lying to the courts" and generally engaging in a "pattern of dishonesty." He testified that she withheld information from a child's doctor, causing the doctor to improperly wean the child off a prescription medication. Mother's actions were tantamount to "intentionally or neglectfully failing to provide" the child with medical care. Father also took issue with Mother's failure to "s[eek] any divorce-related therapy for the children" or to "take[] the children for a clinical mental health evaluation and treatment" at his request. As further evidence of Mother's dishonesty, Father pointed to her failure to timely inform him when she received substantial pay raises that could have affected his child support obligation.

Still, Father acknowledged that "it's really hard to say anything bad about [Mother] as far as her parenting." According to Father and Mother, the children were doing well in and out of school. During in camera interviews, each of the children told the court that they knew both parents loved them. They liked being at both parents' homes. They each made positive comments about their schools, their friends, and their extracurricular activities.

Since the divorce, Mother and Father had changed careers and salaries multiple times. Throughout the changes, Father claimed that his child support obligation was often unsustainable. After the divorce, he had approximately "$400 a month of . . . disposable income that wasn't already spoken for." So he did not make any child support payments until the court entered the wage garnishment order. He asked for a deviation based on "undue hardship," but the court never ruled on his request. So, after the wage garnishment stopped during a period of unemployment, Father again ceased making payments, even after accepting a new job.

3

Mother claimed Father was voluntarily underemployed. Father insisted that he resigned from his position in April 2022 for health reasons.

The court denied both petitions to modify the parenting plan. Based on the evidence, it determined that "[n]o material change of circumstances ha[d] occurred." Nor did Mother establish sufficient grounds to limit Father's residential parenting time. The court also considered the best interest factors and concluded that, "even if grounds existed for a change of placement, the best interest analysis[] would also not favor a change of placement."

The court granted Father's request to modify child support based on the significant changes in the parties' incomes since the divorce. Given the parents' fluctuating incomes, the court calculated child support over five separate periods of time.[1] But it denied Father's request for a downward deviation.

## II.

On appeal, Father asserts numerous errors.[2] He asks this Court to reverse the court's custody ruling and remand for "further proceedings in the trial court as may be needed to clear up the trial court's errors." Because this was a bench trial, we review the trial court's factual findings de novo on the record with a presumption of correctness. TENN. R. APP. P. 13(d); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013). We review the trial court's conclusions of law de novo with no presumption of correctness. *Armbrister*, 414 S.W.3d at 692.

---

[1] The court concluded that Father's child support obligations were as follows: $717 per month for the first period, from February 2019 to March 2020; $419 per month for the second period, from April 2020 to August 2020; $300 per month for the third period, from September 2020 to April 2021; $643 per month for the fourth period, from May 2021 to April 2022; and $300 per month for the fifth period, beginning May 2022.

[2] Father asks us to consider several post-trial examples of Mother's continuing bad behavior. *See* TENN. R. APP. P. 14(a). Generally, consideration of post-judgment facts extends "only to those facts, capable of ready demonstration, affecting the positions of the parties or the subject matter of the action such as mootness, bankruptcy, divorce, death, other judgments or proceedings, relief from the judgment requested or granted in the trial court, and other similar matters." *Id.* Consideration of post-judgment facts "is not intended to permit a retrial in the appellate court." *Id.* advisory comm'n cmt. We decline to exercise our discretion to consider additional evidence relevant to issues already litigated in the trial court. *See Duncan v. Duncan*, 672 S.W.2d 765, 767 (Tenn. 1984) (cautioning appellate courts not to use Rule 14 to renew factual issues from the trial). So the request is denied.

## A. Pretrial Decisions

We may quickly dispense with Father's complaints about the court's pretrial decisions. He first argues that the court erred in denying his motion for the appointment of a guardian ad litem. A court has discretion to appoint a guardian ad litem in a custody proceeding "when the court finds that the child[ren]'s best interests are not adequately protected by the parties and that separate representation of the child[ren]'s best interests is necessary." TENN. R. SUP. CT. 40A § 3(a). But this discretion "sh[ould] be exercised sparingly." *Id.* § 3(b). Father contends that the court failed to properly consider the relevant factors in making this decision. *See id.* § 3(c). In his view, the contentious nature of the parties' allegations and the potential for substantial changes in children's lives weighed in favor of appointment.

We discern no abuse of discretion in the court's decision. The court applied the correct legal standard and reached a logical decision based on a reasonable assessment of the evidence. *See Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). After considering the parties' arguments, the court determined that the children's best interests were adequately protected. TENN. R. SUP. CT. 40A § 3(a). The children had already been interviewed by guardians ad litem twice in related litigation. *See id.* § 3(c)(3). And Father indicated that he would accept in camera interviews with the children in lieu of an appointment. *See id.* § 3(a)(5).

Next, Father complains that the court erroneously limited the presentation of evidence at trial. Given that Father agreed to this limitation, we decline to grant him any relief on this basis. *See* TENN. R. APP. P. 36(a). This Court is not required to grant relief "to a party responsible for an error" or one "who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error." *Id.* Here, Mother filed a motion in limine seeking to limit the evidence at trial to events that occurred since the previous modification hearing. Although Father initially opposed Mother's motion, he later agreed that he "c[ould] live with" this limitation. And at the final hearing, Father objected to any questions about events that happened outside the scope of that limitation.

For similar reasons, we will not disturb the court's ruling on Father's motion for the destruction of his Rule 35 examinations in the original divorce proceeding. *See id.* Father initially requested the immediate destruction of his Rule 35 examinations. *See* Tenn. Code Ann. § 36-6-106(a)(8) (2021) (requiring a court's disclosure order to "provide[] for the return or destruction of the confidential protected mental health information at the conclusion of the proceedings"). Yet he recognized that a potential appeal would stay any order for destruction of the examinations. So instead he requested "that the court order them destroyed at the conclusion of these proceedings, whatever that may be." Based on this concession, the court denied his motion without prejudice. Should Father seek to revisit this issue, he may file a new motion in the trial court.

5

## B. Parenting Plan

Father contends that the trial court erred in denying his request for a change in custody. The threshold issue in any parenting plan modification is whether a material change in circumstance has occurred since the court adopted the current plan. Tenn. Code Ann. § 36-6-101(a)(2)(B)(i), (C) (2021); *C.W.H. v. L.A.S.*, 538 S.W.3d 488, 496 (Tenn. 2017). Not every change in circumstance is material: "[t]he change must be 'significant' before it will be considered material." *In re T.C.D.*, 261 S.W.3d 734, 744 (Tenn. Ct. App. 2007).

In the context of a change in primary residential parent, a material change in circumstance may "include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(B)(i). The threshold for modification of the residential parenting schedule is lower: "merely showing that the existing arrangement [is] unworkable for the parties is sufficient." *Rose v. Lashlee*, No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at *2 n.3 (Tenn. Ct. App. Aug. 18, 2006). Whether there has been a material change in circumstance is a question of fact. *Armbrister*, 414 S.W.3d at 692-93.

Father argues that he proved a material change in circumstance based on evidence of "Mother's repeated failure to follow the existing child custody order . . . lying to court . . . and making false claims of abuse." Father offered evidence that Mother failed to follow the parenting plan by exchanging the children late on two occasions and by failing to timely update her salary. And he demonstrated that he and Mother had disagreements about how to raise the children, such as their different opinions about phone usage. On appeal, he reiterates these complaints and faults the trial court for "fail[ing] to comment on Mother's moral character."

The evidence does not preponderate against the trial court's finding of no material change in circumstance. Father failed to demonstrate anything that affected the children's wellbeing significantly enough to warrant a change in custody. *See Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002), *abrogated on other grounds by Armbrister*, 414 S.W.3d at 704 (explaining that one factor to consider in determining whether a change is material is whether the change "affects the child's well-being in a meaningful way"). The court found that the children were "generally well-adjusted." They had stability under the current parenting plan. They were succeeding in their academics and extracurriculars. They loved both parents and knew that both parents loved them.

Because the evidence does not preponderate against the finding of no material change in circumstance, we do not reach Father's argument that the court erred in its analysis of the children's best interests. *See Pippin v. Pippin*, 277 S.W.3d 398, 405 (Tenn. Ct. App. 2008) (explaining that "if no material change in circumstance has been proven,

6

the . . . court 'is not required to make a best interests determination and must deny the request for a change of custody'" (quoting *Caudill v. Foley,* 21 S.W.3d 203, 213 (Tenn. Ct. App. 1999))).

## C. Child Support

Father challenges the trial court's child support determination.[3]  Our standard of review is deferential. *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). Yet even "[d]iscretionary decisions must take the applicable law and the relevant facts into account." *Lee Med., Inc.*, 312 S.W.3d at 524.

Tennessee courts are required to make decisions regarding child support "within the strictures of the Child Support Guidelines." *Richardson*, 189 S.W.3d at 725.  This includes modification decisions such as this one.  TENN. COMP. R. & REGS. 1240-02-04-.05(5) (2021).  The Guidelines, "when properly applied, create a rebuttable presumption of the proper award." *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005); TENN. COMP. R. & REGS. 1240-02-04-.01(1)(d)(1) (2021).  The presumptive amount is calculated based on the parents' combined gross income after allowable adjustments. TENN. COMP. R. & REGS. 1240-02-04-.04(11) (2021).

### 1. Minimum Child Support Rule

Father first contends that the trial court misapplied the "minimum child support rule" in setting his child support obligation. *See id.* 1240-02-04-.05(6).  According to Father, his monthly child support obligation based on the Guidelines for the period beginning May 2022 was $259.  But the court "ordered it raised to $300, based on an errant understanding" of the applicable regulation.  And the court made this same mistake in setting his obligation for the retroactive period between September 2020 and April 2021. For that period, the court ordered the amount raised from $235 to $300.

Once a significant variance has been found, the court must increase or decrease the support order as appropriate under the Guidelines. *Id.* 1240-02-04-.05(5).  Believing that the Guidelines required a minimum child support order of $100 per child, the court set Father's child support obligation for two of the five periods at $300.  Under the Guidelines, in most cases, "[i]t is the obligation of all parents to contribute to the support of their children with a minimum child support order of at least one hundred ($100) per month."[4] *Id.* 1240-02-04-.05(6)(a); *see also id.* 1240-02-04-.04(12)(a).  Applying the plain meaning

---

[3] Neither party questions whether modification of the original child support order was appropriate. *See* Tenn. Code Ann. § 36-5-101(g)(1) (2021); TENN. COMP. R. & REGS. 1240-02-04-.05 (2021).

[4] The minimum child support requirement is inapplicable in certain circumstances, none of which are present here.  *See* TENN. COMP. R. & REGS. 1240-02-04-.05(6)(b).

of these words, we conclude that the minimum child support order is $100 per month, not per child. To interpret the regulation as a per child minimum impermissibly adds words to the regulation. *See Coleman v. State*, 341 S.W.3d 221, 241 (Tenn. 2011) (reasoning courts "must be circumspect about adding words to a statute."); *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 679 (Tenn. 2002) (noting that courts apply same general rules of construction to administrative rules and regulations).

Because the increase of Father's child support obligation from the presumptive amount in the Guidelines resulted from a misunderstanding of the minimum child support order provision, we conclude there was error. *See Lee Med., Inc.,* 312 S.W.3d at 524 (explaining that a trial court abuses its discretion when it applies the wrong legal standard). While the court had discretion to deviate from the presumptive amount, there is no indication that the trial court intended to order a deviation here. *See* TENN. COMP. R. & REGS. 1240-02-04-.05(6)(d), -.07(1) (2021).

To calculate the presumptive amount of child support, courts must use the worksheets provided by the Department of Human Services. *Id.* 1240-02-04-.08(1)(a) (2021); *see also id.* 1240-02-04-.05(4). The completed worksheets "must be maintained as part of the official record either by filing them as exhibits in the tribunal's file or as attachments to the order except in cases where the child is in state custody." *Id.* 1240-02-04-.08(1)(a). This record contains only an income shares summary screen showing Father's presumptive obligation for the period beginning May 2022. There are no supporting worksheets for the other relevant period, the period between September 2020 and April 2021.

Although the final order indicates that the court may have used child support worksheets to calculate Father's obligation, the completed worksheets were not attached as exhibits to the order. Nor do they appear elsewhere in the appellate record. Under these circumstances, we deem it appropriate to vacate the child support awards for the period beginning May 2022 and the period between September 2020 and April 2021. We remand this matter to the trial court for entry of a new final order setting child support for these two periods.[5] After making its calculations, the court should attach the completed child support worksheets as exhibits to the new order.

---

[5] Although Father argues in his brief that child support for this period should be recalculated "based on Mother's actual, not dishonest, 2022 income," he did not designate this as an issue in accordance with Tennessee Rule of Appellate Procedure 27. Additionally, his contention does not "fall within the scope of the stated issues," nor do "the issues and argument taken together clearly present the grounds for appellate relief" on this point. *See Trezevant v. Trezevant*, 696 S.W.3d 527, 531 (Tenn. 2024). So we deem the issue waived. *See id*.

2. Downward Deviation for Undue Hardship

Father contests the court's denial of his request for a downward deviation in child support for the period between February 2019 to March 2021. Trial courts have discretion to grant a deviation from the Guidelines. *Jones v. Jones*, 930 S.W.2d 541, 544 (Tenn. 1996). But they must "take the applicable law and the relevant facts into account." *Lee Med., Inc.*, 312 S.W.3d at 524. The Guidelines provide the "framework for assessing whether a deviation is appropriate." *Reeder v. Reeder*, 375 S.W.3d 268, 275 (Tenn. Ct. App. 2012); *see also* TENN. COMP. R. & REGS. 1240-02-04-.07. In assessing a request for a downward deviation in child support, the court's primary concern is the best interest of the children. TENN. COMP. R. & REGS. 1240-02-04-.07.

Father asserts that the trial court "failed to make a proper child support downward deviation analysis . . . due to [his] inability to pay." The Guidelines allow a trial court to order a downward deviation "[i]n instances of extreme economic hardship." *Id.* 1240-02-04-.07(2)(e). Father contended that he was unable to pay more than $100 per month in child support for this period because he had only around $400 of "disposable income" after paying regular bills. Yet the trial court concluded that Father failed to provide any testimony or evidence relative to Mother's ability to provide for the children during this period. *See id.* 1240-02-04-.07(1)(d) (requiring a court to consider how deviation may affect the ability of the primary residential parent to provide necessities for the children). So the trial court did not abuse its discretion in denying a downward deviation for child support during this period.

D. Attorney's Fees and Costs

For her part, Mother seeks attorney's fees for defending against a frivolous appeal. *See* Tenn. Code Ann. § 27-1-122 (2017). A frivolous appeal is one that is "utterly devoid of merit," *Combustion Engineering, Inc. v. Kennedy*, 562 S.W.2d 202, 205 (Tenn. 1978), or has "no reasonable chance of success," *Davis v. Gulf Insurance Group*, 546 S.W.2d 583, 586 (Tenn. 1977). This appeal was not devoid of merit; it was largely unsuccessful, not frivolous. *See Coolidge v. Keene*, 614 S.W.3d 106, 120 (Tenn. Ct. App. 2020).

Mother also seeks an award of attorney's fees under Tennessee Code Annotated § 36-5-103. Under the version of Tennessee Code Annotated § 36-5-103(c) applicable when this action was filed, we have the discretion to award such fees. Tenn. Code Ann. § 36-5-103(c) (2021). In exercising our discretion, we consider: (1) the requesting party's ability to pay the accrued fees; (2) the requesting party's success in the appeal; (3) whether the requesting party sought the appeal in good faith; and (4) any other relevant equitable factors. *Hill v. Hill*, No. M2006-02753-COA-R3-CV, 2007 WL 4404097, at *6 (Tenn. Ct. App. Dec. 17, 2007). Considering these factors, we decline to award Mother attorney's fees.

For his part, Father seeks an award of his costs on appeal. Based on our disposition of the appeal, we decline to award Father his costs. *See* TENN. R. APP. P. 40.

## E. Father's Additional Requests

Father filed several motions for relief in this Court. Two motions remain pending. In his "Motion for Issuance of a Child Custody Order in the Court of Appeals," Father asks us to temporarily enter his proposed parenting plan pending resolution of this appeal, adjust the child support order accordingly, and order a "limited remand for any expedited fact-finding necessary . . . such as a further interview of the children as to their wishes." In his "Motion to Determine Name of the Defendant-Appellee," he requests that this Court inform him which surname Mother currently uses. Because we see no basis to grant these requests, the motions are denied.

## III.

The evidence does not preponderate against the trial court's finding that there was no material change of circumstance. But because the court erred in its application of the child support guidelines as to two periods of time, we vacate its award of child support as to those time periods. We remand for the sole purpose of recalculation of Father's child support obligation for these time periods and entry of a new final order including supporting worksheets.[6] In all other respects, we affirm.


        s/ W. Neal McBrayer
        W. NEAL MCBRAYER, JUDGE

---

[6] We deny Father's request for reassignment to a new judge upon remand.