IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 21, 2023 Session

**KRISTINA COLLINS RAMSEY v. AUSTIN A. RAMSEY**

**Appeal from the Chancery Court for Sevier County**
**No. 20-9-173 Telford E. Forgety, Jr., Chancellor**

_____

**No. E2022-01295-COA-R3-CV**

_____

The mother in this action filed for divorce and sought to relocate to North Carolina with the parties' son. Following settlement of all issues aside from the matters of parenting time and child support, the trial court designated the mother primary residential parent and allowed her to move back to her home state. The father appealed. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

William A. Mynatt, Knoxville, Tennessee, for the appellant, Austin A. Ramsey.

Ben H. Houston, II, Knoxville, Tennessee, for the appellee, Kristina Collins Ramsey.

**OPINION**

**I. BACKGROUND**

Kristina Collins Ramsey ("Mother"), and Austin A. Ramsey ("Father"), were married on September 18, 2015, in Sevier County, Tennessee. The parties have one son by the marriage ("the Child"), who was born in 2020. After the Child's birth, Mother stayed at home as primary caregiver for her son while Father continued to work. Both parents are in their 30s.

In July 2020, Father left the marital residence voluntarily and moved in with an

individual with whom he purportedly regularly smoked marijuana. Father acknowledged at trial that the man has a criminal history, but Father claimed to be uncertain of the exact details. Mother was aware that prior to Father's discharge from the military, he became addicted to pain pills and had to enter rehabilitation. Due to Father's history of substance abuse, Mother was concerned about Father smoking marijuana in the presence of the Child. Father tested positive for marijuana in October 2020, and, at trial in May 2022, he admitted that he would probably test positive for marijuana because he smoked it during his trips to Michigan every month or so to meet up with friends. He acknowledged that he had also used marijuana in Tennessee. Additionally, Father admitted to purchasing Adderall illegally despite his prior history of opioid abuse.

According to Mother, after Father voluntarily left the marital home in July 2020, he sporadically visited the Child during July through September 2020. She observed that there were occasions she asked Father to babysit, but he failed to show up. Mother related to the court that Father had an explosive temper. In response, Father acknowledged the incidents claimed by Mother but asserted that she had exaggerated the situations.

Mother filed for both a divorce and an order of protection on September 22, 2020. An ex parte order of protection was entered on the same date. After a court hearing on October 2, 2020, the order of protection case was consolidated with the divorce case. Ultimately, the order of protection was extended for a period of one year; it remained in effect until it expired on October 2, 2021.

On October 6, 2020, the parties entered into an agreed order that provided Father only supervised visitation at the home of the Paternal Great Grandmother on Tuesdays from 3:00 p.m. until 6:00 p.m. and on Fridays from 9:00 a.m. until 2:00 p.m.; required both parties to submit to drug screens and to undergo an alcohol and drug assessment, follow all recommendations, and provide verification of the same to the other party; mandated Father undergo an anger management assessment, follow all recommendations of the assessment, and provide written verification of the same to Mother's attorney; and required Father to pay Mother's car payment, her automobile insurance, the health insurance for the Child, the monthly electric bill at the marital home, and the outstanding credit card bills each and every month. Following the entry of the agreed order, Father did submit to a drug screen, which showed that he was positive for marijuana. There is no indication in the record as to whether Father ever submitted to the required alcohol and drug assessment. Father testified that he went to one anger management class, but he could not remember the instructor's name and no evidence was admitted to corroborate his attendance. Mother's drug screen was negative for all substances. However, Mother did submit to an alcohol and drug assessment as ordered, which showed that she had a low probability of having substance use disorders; no treatment was recommended for her.

Father thereafter cut off Mother's access to both their joint bank accounts and their joint credit cards. He withdrew all of the funds from their joint SunTrust account. Despite

entering into the agreed order requiring him to do so, Father failed to pay Mother's car payment as ordered, and her car was repossessed. He also neglected to pay the electric bill at the marital home, the automobile insurance, the health insurance, or any child support whatsoever until July 2021, at which time he was finally ordered to meet the responsibility. During this same time frame, Father made sufficient payments on his 2018 Denali so as to avoid repossession of that vehicle. Additionally, he apparently made monthly trips to Michigan to visit friends and smoke marijuana.

About two months after the entry of the agreed order, in December 2020, the trial court heard Father's "Motion for Proposed Parenting Time." There is no transcript of this proceeding in the record, but according to the order entered by the court, testimony was heard and evidence was presented. The results of Father's drug screen admitted into evidence at this hearing revealed that he had tested positive for marijuana. The trial court thereafter held that "based upon the testimony of the parties, the evidence presented including but not limited to the audio and video tape of the Husband's violent outburst in the presence of the minor child, the record as a whole and for other good cause shown, the Court orders . . . that the October 6, 2020 Order shall remain in full force and effect."[1]

Both Father and Mother, who have some college level education, have experience working in the timeshare industry. Father was the primary breadwinner throughout the parties' marriage. He earned well into the six figures for several years, and in 2019, he grossed $207,675 while working for Wyndham Vacation Ownership. It appears the most money that Mother ever earned was around $60,000, and that was several years prior to the Child's birth. In 2019, Mother operated an unprofitable business that incurred a net loss of $70,746.

Following the filing of the divorce case in September 2020, Father was furloughed from his position with Wyndham. He reported income of $43,265.00 on his taxes for that year. This total did not include his military disability benefits ($1,426.17 per month, or $17,114.04 for the year 2020), as his Veteran's Administration ("VA") disability benefits are not taxable.[2] In early March 2021, Wyndham advised Father that his furlough was ending; however, he did not return to work, and his employment was terminated.

Instead of securing a job making more money, Father began working at a jewelry store owned by his mother making $300 per week. He observed that he was highly effective in the timeshare industry but claimed that the work interfered with his ability to have time with the Child. In 2021, Father reported income of $47,948 on his taxes. Additionally, he received $17,336.52 in non-taxable VA disability benefits. His attorney conceded at trial

---

[1] This order did permit Father to have some minimal unsupervised visitation on Christmas Day 2020 from 10:00 a.m. until 2:00 p.m.; however, it otherwise kept the October 6, 2020 agreed order in effect.

[2] Father has an 80% disability rating for post-traumatic stress disorder ("PTSD").

- 3 -

that Father was voluntarily underemployed.

In December 2021, after the order of protection had expired, Mother began allowing Father to have some limited, unsupervised visits with the Child. According to Mother, however, on a couple of occasions, the Child was returned to her smelling of marijuana. Mother thereafter demanded Father take a drug screen before she would permit additional overnight visitation. Father refused her request.

A bench trial was held on May 18-19, 2022, wherein both parties testified extensively and numerous exhibits were admitted into evidence. Mother also discussed the support system she would have should she be permitted to move to Maysville, North Carolina with the Child. She explained that they would be able to live with her Grandmother, who has extra room in her home, and that family members would be able to help her with the Child. She noted that the Child has several cousins in the Maysville area that are around his age. She further observed that there is a house her family might be able to help her purchase close to her family's property. According to Mother, although this house needs repair, with the help of her Dad, a carpenter, her brother, an electrician, and other family members, she could fix it up to be a home for herself and the Child. Finally, she testified that she has a job opportunity in Maysville to become a full-time substitute teacher.

As to remaining in the Sevierville area, Mother claimed that she could not afford to refinance the marital residence and buy out Father's share. She asserted that she had looked at both purchasing and renting other housing in the Sevierville area, but that due to her low credit rating, in significant part caused by Father refusing to fulfill his court-ordered financial obligations, landlords will not consider her and she does not qualify for a mortgage. With regard to her employment prospects in the Sevierville area, Mother testified that she had been unable to find full-time work that would not conflict with the Child's day care schedule. Mother claimed that she is unable to return to the timeshare industry and meet her parental responsibilities because of the hours involved.

On August 19, 2022, the trial court announced its ruling. After considering the factors set forth by Tennessee Code Annotated section 36-6-106(a), the court ruled that Mother should be named as the Child's primary residential parent, and that she should be permitted to move to North Carolina with the Child. Mother was also designated as the decision maker regarding all major educational, non-emergency health care, religious upbringing, and extracurricular activity decisions. In arriving at this conclusion, the court noted the importance of factor number four regarding the disposition of each parent to provide the child with food, clothing, medical care, education, and other necessary care. The trial court observed that this factor favored Mother because, up until July 12, 2021, Father failed to pay any child support. With regard to factor ten involving the importance of continuity in the life of the child, the trial court recognized that the Child has lived primarily with Mother for most of his life. Other factors weighed by the court were found

to be either inapplicable to this case or to favor neither parent.

As to co-parenting, the trial court awarded Mother 230 days a year and Father 135 days a year. Father's visitation with the Child runs from Friday at 1:00 p.m. until Tuesday at 1:00 p.m. on the first and third weekend of every month. The court also provided Father visitation with the Child every other week during the months of June, July, and August. As to the child support issue, the court found that both parents were underemployed and imputed income to both in the amount of $43,761 for Father and $35,936.04 for Mother, which is the median gross income for males and females respectively in the State of Tennessee as set forth in the Tennessee Child Support Guidelines. Father thereafter filed this timely notice of appeal.

## II. ISSUES

The issues raised by Father in this appeal are restated as follows:

A. Whether the trial court acted within its discretion when naming Mother as the primary residential parent.

B. Whether the trial court acted within its discretion by allowing Mother to relocate to Maysville, North Carolina.

C. Whether the trial court acted within its discretion when ordering the co-parenting schedule set forth by the Permanent Parenting Plan entered on August 19, 2022.

D. Whether Mother should be awarded her attorney's fees on this appeal.

## III. STANDARD OF REVIEW

Findings of fact by a trial court in a civil action are "*de novo* upon the record of the trial court, accompanied by a presumption of correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). We review the legal conclusions of the trial court *de novo* with no such presumption of correctness. *Chaffin v. Ellis*, 211 S.W.3d 264, 285 (Tenn. Ct. App. 2006).

## IV. DISCUSSION

### A.

The primary issue before us is co-parenting with the Child, as no disputes remain between the parties as to the divorce and property. When determining the residential

schedule between parties in a divorce case, trial courts must consider the fifteen factors set forth by Tennessee Code Annotated section 36-6-106(a). "In choosing which parent to designate as the primary residential parent for the child, the court must conduct a 'comparative fitness' analysis, requiring the court to determine which of the available parents would be comparatively more fit than the other." *Chaffin*, 211 S.W.3d at 286 (citing *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983)). The factors are as follows:

(1) The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child. . . .;

(3) Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6) The love, affection, and emotional ties existing between each parent and the child;

(7) The emotional needs and developmental level of the child;

(8) The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child. . . .;

(9) The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11) Evidence of physical or emotional abuse to the child, to the other parent

or to any other person. The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(15) Any other factors deemed relevant by the court.

Pursuant to statute and applicable case law, "the welfare and best interests of the child are the paramount concern in custody, visitation, and residential placement determinations, and the goal of any such decision is to place the child in an environment that will best serve his or her needs." *Grissom v. Grissom*, 586 S.W.3d 387, 391 (Tenn. Ct. App. 2019) (quoting *Burden v. Burden*, 250 S.W.3d 899, 908 (Tenn. Ct. App. 2007)). This court has held:

Ascertaining a child's best interests does not call for a rote examination of each of [the relevant] factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*Id.* at 393 (citing *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005)).

Trial courts are afforded "broad discretion to fashion custody and visitation arrangements that best suit the unique circumstances of each case, and the appellate courts are reluctant to second-guess a trial court's determination regarding custody and visitation." *Id.* (quoting *Reeder v. Reeder*, 375 S.W.3d 268, 278 (Tenn. Ct. App. 2012)). The determination by the court of custody and visitation "will not ordinarily be reversed absent some abuse of that discretion." *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988). "Under the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). "A trial court abuses

its discretion only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not allow an appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). Appellate courts should not overturn a trial court's decision merely because reasonable minds could reach a different conclusion. *Eldridge*, 42 S.W.3d at 85.

The facts before us support the trial court's determination that it is in the Child's best interest for Mother to be named as the primary residential parent. At the time of the trial, Mother had been the primary caregiver for the Child for his entire life, and the trial court observed that "the child has primarily lived with the wife." The court's finding impliedly addresses Tennessee Code Annotated section 36-6-106(a)(10) dealing with the "importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment."

The court also found that Mother was the parent with more of a propensity to provide the Child with food, clothing, medical care, education and other necessary care. Tenn. Code Ann. § 36-6-106(a)(4)). As to this factor, the court noted that Father "did not pay any child support ... for approximately 1 year." The court admonished Father that "a parent knows that a child has got to have a roof over its head, has to have clothes on its back, has got to have food on the table, whether the parents get along" or not.

The trial court's overall balancing of the factors favored Mother and are in harmony with the trial court's determination that Mother should be designated as the Child's primary residential parent. The trial court did not abuse its discretion. Father's arguments that he does not agree with the conclusion reached by the trial court are unavailing. The trial court conducted a proper best interest analysis pursuant to Tennessee Code Annotated section 36-6-106(a), and the evidence does not preponderate against those findings.

As to Mother's motion for consideration of post-judgment facts, she asserts Father's recent indictment for tax fraud also implicates the factors set forth by Tennessee Code Annotated section 36-6-106(a)(1), (8), & (10). We find that consideration of the post-judgment facts submitted by Mother is inappropriate pursuant to Rule 14 of the Tennessee Rules of Appellate Procedure. We therefore deny the motion.

B.

The parental relocation statute, Tennessee Code Annotated section 36-6-108, is not applicable in this appeal, as the matter before us involves an initial co-parenting determination. *See Nasgovitz v. Nasgovitz*, No. M2010-02606-COA-R3-CV, 2012 WL 2445076, at *5 (Tenn. Ct. App. June 27, 2012). The proper manner to address a relocation request such as the one in this case is for the trial court to consider the best interest of the

child. *Id.* at *6-7. Here, the trial court accredited the testimony of Mother regarding the proposed relocation. The court noted that "the Wife is living in a marital home that is about to be sold, and the Wife has nowhere to go in Tennessee." The court determined that with a credit score of 511, Mother probably would be unable to secure housing in Sevier County. Accordingly, the court found that it could not deny Mother going back to North Carolina, "because the Court does not see that she could stay here." The trial court recognized that Mother has a larger familial support system and better employment prospects at her proposed place of relocation than she would if she were required to stay in Tennessee. The court acted within its sound discretion by permitting Mother to relocate to North Carolina where she has housing, job opportunities, and a support system.

C.

"Determining the details of parenting plans is 'peculiarly within the broad discretion of the trial judge.'" *Armbrister v. Armbrister*, 414 S.W. 3d 685, 693 (Tenn. 2013) (quoting *Suttles v. Suttles*, 748 S.W.2d at 429). "'It is not the function of appellate courts to tweak a [residential parenting schedule] in the hopes of achieving a more reasonable result than the trial court.'" *Id.* (quoting *Eldridge*, 42 S.W.3d at 88).

The trial court awarded Mother 230 days a year and Father 135 days a year, with Father having visitation with the Child from Friday at 1:00 p.m. until Tuesday at 1:00 p.m. on the first and third weekend of every month. The trial court also awarded Father visitation with the Child every other week during the months of June, July, and August. Father objects, however, to the fact that a fifty-fifty schedule was not ordered. He argues that the trial court should have entered a permanent parenting plan "that permits both parents to enjoy the maximum participation possible in the life of the child ...." *See* Tenn. Code Ann. § 36-6-106(a).

As this court recently observed in *McDonald v. Coffel*, No. E2022-01569-COA-R3-CV, 2024 WL 93317, at *8 (Tenn. Ct. App. Jan. 9, 2024):

> [T]his Court has explained that consideration of a child's "best interest" outweighs consideration of the policy favoring a parent's "maximum participation" with a child:
>
> [A]s noted in *Rountree* [*v. Rountree*], the court's ultimate determination must be guided by the best interest of the child. *Rountree*, 369 S.W.3d [122] at 129, 133 [(Tenn. Ct. App. 2012)]. Stated differently, "the best interest of the child, not the 'maximum participation possible' concept, remains the primary consideration under the governing statutory scheme." *Flynn v. Stephenson*, No. E2019-00095-COA-R3-JV, 2019 WL 4072105, at *7 (Tenn. Ct. App. Aug. 29, 2019). "Section 36-6-106(a) directs courts to order custody arrangements that allow each parent to enjoy the maximum possible

participation in the child's life *only to the extent that doing so is consistent with the child's best interests.*" *Id.* (emphasis added) (quoting *In re Cannon H.*, No. W2015-01947-COA-R3-JV, 2016 WL 5819218, at *6 (Tenn. Ct. App. Oct. 5, 2016)).

*Powers v. Powers*, No. M2019-01512-COA-R3-CV, 2021 WL 1292425, at *7 (Tenn. Ct. App. Apr. 7, 2021).

The trial court in the instant case observed that the parties "have not demonstrated an ability to cooperate with one another to the extent to make a half and half schedule work yet even if the Wife could live in Sevier County, Tennessee." We have previously held that equal time parenting plans like the one proposed by Father are inherently unworkable in cases like the one before us where parents have demonstrated an inability to cooperate with one another. *See Rajendran v. Rajendran*, No. M2019-00265-COA-R3-CV, 2020 WL 5551715, at *8-10 (Tenn. Ct. App. Sept. 16, 2020); *see also Darvarmanesh v. Gharacholou*, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *8 (Tenn. Ct. App. July 19, 2005)(stating that in order for an equal parenting arrangement to be consistent with the bests interest of the child, there must be "a harmonious and cooperative relationship between both parents."). The trial court did not abuse its discretion by refusing Father's request for equal parenting time and instead entering a parenting plan that awarded Mother 230 days, Father 135 days, and designated Mother as the primary decision maker on all major educational, non-emergency health care, religious, and extracurricular activity decisions.

D.

Mother has requested that we award her the attorney's fees she has incurred on appeal. Pursuant to Tennessee Code Annotated section 36-5-103(c), this court has the authority to award attorney's fees to the prevailing party in this child custody dispute. "'[I]n cases involving the custody and support of children, . . . it has long been the rule in this State that counsel fees incurred on behalf of minors may be recovered when shown to be reasonable and appropriate.'" *Taylor v. Fezell*, 158 S.W.3d 352, 360 (Tenn. 2005)(quoting *Deas v. Deas*, 774 S.W.2d 167, 169 (Tenn. 1989)). The allowance of attorney's fees "is for the benefit of the child, and the custodial spouse should not have to bear the expense incurred on the child's behalf.'" *Huntley v. Huntley*, 61 S.W.3d 329, 341 (Tenn. Ct. App. 2001) (citing *Ragan v. Ragan*, 858 S.W.2d 332, 334 (Tenn. Ct. App. 1993)); *see also Sherrod v. Wix*, 849 S.W.2d 780, 785 (Tenn. Ct. App. 1992)(explaining that the purpose of these awards is to protect the child's legal remedies, not the custodial parent's). "Accordingly, requiring parents who precipitate custody or support proceedings to underwrite the costs if their claims are ultimately found to be unwarranted is appropriate as a matter of policy." *Sherrod*, 849 S.W.2d at 785.

Upon reviewing the pertinent facts in this case, we find that Mother should be

awarded her attorney's fees on this appeal. Father's actions during the pendency of the divorce case detrimentally affected the financial situation for Mother and the Child. Additionally, Father has a superior earning capacity to that of Mother and is in a financially superior position. In the exercise of our discretion, we conclude that an award of attorney's fees to Mother is appropriate. We remand this matter to the trial court to determine the appropriate amount of attorney's fees to which Mother is entitled.

## V. CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court, grant Mother her attorney's fees incurred on appeal, and remand to the trial court to determine the proper amount of Mother's award of attorney's fees. Costs of this appeal are taxed to the appellant, Austin A. Ramsey.

_____

JOHN W. MCCLARTY, JUDGE