IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 3, 2025

**JOHN BYRON MEJIA v. JENNA MICHELLE LEONE**

**Appeal from the Chancery Court for Rutherford County**
**No. 21-CV-1803          Darrell Scarlett, Judge**
———————————————————

**No. M2024-00303-COA-R3-CV**
———————————————————

This is an appeal from the trial court's entry of a permanent parenting plan involving one minor child. The trial court named the father the primary residential parent, entered a parenting plan awarding the father the majority of parenting time during the school year, and gave the father authority over the child's education. The mother appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the court, in which FRANK G. CLEMENT JR., P.J., M.S., and KENNY ARMSTRONG, J., joined.

Mitchell E. Shannon, Murfreesboro, Tennessee, for the appellant, Jenna Michelle Leone.

Benjamin Lewis, Murfreesboro, Tennessee, for the appellee, John Byron Mejia.

**OPINION**

**I.      BACKGROUND**

The Child at issue was born out of wedlock to John Byron Mejia ("Father") and Jenna Michelle Leone ("Mother") in July 2019. The parties resided together in LaVergne, Tennessee for approximately one year but never married. They separated but mutually agreed on their co-parenting time without court involvement until October 5, 2021, when Father filed the instant action to establish a permanent parenting plan and set child support.

Father requested equal co-parenting time, with an alternating biweekly co-parenting schedule. During the pendency of the action, Mother moved with the Child and enrolled him in pre-school. Mother requested the majority of co-parenting time, citing the Child's

school schedule and her close proximity to the school.

The action proceeded to a hearing on August 22, 2023, at which both parents testified. Father testified concerning his difficulty in communicating with Mother concerning the Child. He noted that she requested the use of a specific communication application but did not respond to his messages. His repeated request for the Child's social security number to enroll the Child in his insurance plan went unanswered. She also enrolled the Child in preschool without his involvement or knowledge and did not allow him to speak with the Child on his fourth birthday. He expressed concern regarding Mother's ability to provide care and support for the Child, who was one of her six children residing in her studio apartment. He questioned her stability in her current residence, noting that she has moved approximately three times since the Child's birth, resulting in her older children changing schools.

Father testified that the Child is his only child. He is employed and has stayed current with his child support obligation. He claimed that his work schedule was flexible but that he also had family support from his sister[1] and mother, who would assist him in caring for the Child while he was at work. He asserted that he desired more time with the Child and that he felt he was missing the Child's development under the current schedule they agreed upon prior to the hearing. He stated that he would transport the Child to the current pre-school but would prefer to enroll him in the school near his residence.

Father acknowledged that Mother filed a petition for an order of protection against him on August 31, 2021, approximately one year after their separation. Mother confirmed that she filed the petition after Father advised that he intended to establish a permanent parenting plan for the Child. She agreed that the petition was ultimately dismissed. She explained that Father had assaulted her during the relationship and had stalked her after they ended the relationship. Father denied these allegations.

Mother testified that she has six children, ranging in age from six weeks to 15 years old, with the involvement of four different fathers. She explained that her first two children came from a long-term relationship of 12 years, that her second two children came from a long-term marriage of 10 years, and that her youngest child is from her current relationship. She has established co-parenting schedules that allow the siblings to spend time together while not with their fathers. She intended for the Child to keep a similar residential schedule with her serving as the primary residential parent.

Mother currently lives on a 62-acre farm with another family. She assists with the farm and resides in a studio apartment with her children. She separated the apartment with track dividers to provide each child with some privacy. Each child also has their own bed,

---

[1] His sister testified, confirming her ability to assist Father when needed. She further noted Father's attentiveness to the Child and his consistent support and care for him.

and her current partner sleeps on the couch when he is home at the same time as the children. She is reliant on child support, freelance work, and social media commissions for her income. She is also certified as a Reiki master and intends to pursue employment as a spiritual healer once she has recovered from her latest pregnancy.

Mother professed that she enjoys spending time with the children and working on the farm with them. She believed that her suggested residential schedule was in the Child's best interest because it mirrors that of her other children. She asserted that giving the Child more time with Father would be detrimental because the Child struggles with the transition between houses. She explained that the Child has difficulty managing his emotions after transitions and that she was in the process of securing counseling for him to address these issues. She also expressed concern that the Child would feel left out if he spent more time with Father and did not adhere to a similar residential schedule as his siblings. She suggested giving Father additional co-parenting time in the summer when the Child's siblings also spend additional time with their fathers.

Mother acknowledged that she enrolled the Child in pre-school without Father's involvement. She explained that she enrolled all her children in pre-school and assumed that Father understood that the Child would follow the same educational schedule as his siblings. She stated that she has always been the party responsible for school enrollment and other tasks related to her children's care and education. She admitted that she did not respond to Father's messages at times. She explained that she did not have her notifications turned on and that she responded when she viewed the messages.

Following the hearing, the trial court ruled in favor of Father, designating him as the primary residential parent and providing him with sole decision-making authority over the Child's education. The court awarded Mother 100 days of co-parenting time. In so holding, the court noted that it found Father's testimony credible but did not find Mother's testimony credible given the substance of her testimony and her demeanor while testifying. This timely appeal followed the denial of post-trial motions.

## II. ISSUES

We consolidate and restate the dispositive issues on appeal as follows:

A.    Whether the trial court abused its discretion in designating Father as the primary residential parent and setting the residential schedule.

B.    Whether the trial court abused its discretion in giving Father sole decision-making authority over the Child's education.

- 3 -

### III. STANDARD OF REVIEW

We review this non-jury case de novo upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). This presumption of correctness applies only to findings of fact and not to conclusions of law. *Campbell v. Fla. Steel Corp.*, 919 S.W.2d 26, 35 (Tenn. 1996). The trial court's conclusions of law are subject to a de novo review with no presumption of correctness. *Blackburn v. Blackburn*, 270 S.W.3d 42, 47 (Tenn. 2008); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary. *Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011).

Trial courts are afforded "broad discretion to fashion custody and visitation arrangements that best suit the unique circumstances of each case, and the appellate courts are reluctant to second-guess a trial court's determination regarding custody and visitation." *Grissom v. Grissom*, 586 S.W.3d 387, 391 (Tenn. Ct. App. 2019) (quoting *Reeder v. Reeder*, 375 S.W.3d 268, 278 (Tenn. Ct. App. 2012)). The determination by the court of custody and visitation "will not ordinarily be reversed absent some abuse of that discretion." *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988). "Under the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not allow an appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). Appellate courts should not overturn a trial court's decision merely because reasonable minds could reach a different conclusion. *Eldridge*, 42 S.W.3d at 85.

### IV. DISCUSSION

#### A. & B.

When determining the residential parenting schedule between parties, trial courts must consider the factors set forth by Tennessee Code Annotated section 36-6-106(a). "In choosing which parent to designate as the primary residential parent for the child, the court must conduct a 'comparative fitness' analysis, requiring the court to determine which of the available parents would be comparatively more fit than the other." *Chaffin v. Ellis*, 211 S.W.3d 264, 286 (Tenn. Ct. App. 2006) (citing *Bah v. Bah*, 668 S.W.2d 663, 666 (Tenn. Ct. App. 1983)). The factors are as follows:

(1)     The strength, nature, and stability of the child's relationship with each parent, including whether one (1) parent has performed the majority of parenting responsibilities relating to the daily needs of the child;

(2)     Each parent's [] past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents [] to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child ....;

(3)     Refusal to attend a court ordered parent education seminar may be considered by the court as a lack of good faith effort in these proceedings;

(4)     The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(5)     The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(6)     The love, affection, and emotional ties existing between each parent and the child;

(7)     The emotional needs and developmental level of the child;

(8)     The moral, physical, mental and emotional fitness of each parent as it relates to their ability to parent the child ....;

(9)     The child's interaction and interrelationships with siblings, other relatives and step-relatives, and mentors, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(10)     The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(11)     Evidence of physical or emotional abuse to the child, to the other parent or to any other person.  The court shall, where appropriate, refer any issues of abuse to juvenile court for further proceedings;

(12)     The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(13)     The reasonable preference of the child if twelve (12) years of age or

older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(14)  Each parent's employment schedule, and the court may make accommodations consistent with those schedules;

(15)  Any other factors deemed relevant by the court; and

(16)  Whether a parent has failed to pay court-ordered child support for a period of three (3) years or more.

Tenn. Code Ann. § 36-6-106(a). Pursuant to statute and applicable case law, "the welfare and best interests of the child are the paramount concern in custody, visitation, and residential placement determinations, and the goal of any such decision is to place the child in an environment that will best serve his or her needs." *Grissom*, 586 S.W.3d at 391 (quoting *Burden v. Burden*, 250 S.W.3d 899, 908 (Tenn. Ct. App. 2007)). This court held:

> Ascertaining a child's best interests does not call for a rote examination of each of [the relevant] factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*Id.* at 393 (citing *In re Marr*, 194 S.W.3d 490, 499 (Tenn. Ct. App. 2005)).

While many of the factors were equally weighted or inapplicable, the trial court's overall balancing of the factors favored Father and are in harmony with the court's determination that Father should be designated as the Child's primary residential parent and have decision-making authority over his education. The trial court found that Father was "significantly more likely" to facilitate the parent-child relationship with Mother. Tenn. Code Ann. § 36-1-106(a)(2). The court noted that Mother failed to respond to Father's efforts to communicate, moved with the Child and enrolled him in school without Father's knowledge, and now sought to find a counselor for the Child without Father's involvement. Mother also filed an order of protection when she learned of Father's intent to set a permanent parenting plan.

The court opined that the Child's behavior indicated his need for attention and stability, something he could not adequately receive in a studio apartment with five other children and at times, two adults. Tenn. Code Ann. § 36-6-106(a)(7), (10). Mother's frequent moves and living environment evidenced signs of instability, while Father has

resided in the same residence and has maintained longstanding employment. While we acknowledge that Mother's living situation is not inherently unsatisfactory and has not warranted attention from the Tennessee Department of Children's Services, we, like the trial court, are concerned with the best interest of the Child and placing him in the most stable environment that is more likely to support his emotional needs and developmental level. The evidence suggests that placement with Father is the more stable choice in this required comparative fitness analysis.

The geographical distance between the parties also supports the court's setting of the residential schedule. While the parties indicated their ability to take the Child to school outside of their county, we, like the trial court, are concerned with the amount of time the Child would have to spend traveling to facilitate an equal residential schedule. Father is also more suited to make decisions concerning the Child's education in his locality.

With all of the above considerations in mind, we conclude that the trial court conducted a proper best interest analysis pursuant to Tennessee Code Annotated section 36-6-106(a) and that the evidence does not preponderate against those findings. Accordingly, we hold that the trial court did not abuse its discretion in designating Father as the primary residential parent, setting the residential schedule, or in granting him with decision-making authority over the Child's education.[2]

## V.     CONCLUSION

For the reasons stated above, we affirm the trial court's decision. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Jenna Michelle Leone.

_____
JOHN W. MCCLARTY, JUDGE

---

[2] Mother has requested her attorney fees on appeal. Having affirmed the trial court's decision, we respectfully deny Mother's request.